Cicero Eugene **HINES**, Etc., et al., **Plaintiffs-Appellants,**

v.

**RAPIDES PARISH SCHOOL BOARD and Allen Nichols, Superintendent, Defendants-Appellees.**

No. 72–3227.

United States Court of Appeals, Fifth Circuit.

May 8, 1973.

Rehearing Denied June 6, 1973.

Wendell G. Lindsay, Jr., Baton Rouge, La., for plaintiffs-appellants.

Edwin O. Ware, Dist. Atty., Gus Voltz, Jr., Asst. Dist. Atty., Alexandria, La., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal stems from the complaint of a group of parents in Rapides Parish, Louisiana, who are unhappy with the present result of pupil assignments made in compliance with orders of this court and the district court for the Western District of Louisiana. See Valley v. Rapides Parish School Board, 5 Cir. 1970, 434 F.2d 144. These appellants instituted suit, styled as a class action, in the district court for the Western District of Louisiana alleging *inter alia* that the unitary school system envisioned by this court's previous order had not been achieved and that by operating schools with black majorities the school board was providing unequal and less educational opportunity. The district court refused to allow this action to be maintained as a class action and then dismissed the suit in its entirety. In this appeal, plaintiffs challenge both of these determinations.

## I

The plaintiffs in this action are a group of parents, both black and white, whose children were assigned to or are attending a school within the Rapides Parish School System in which black pupils are in a majority. Three of the parents are black and the rest are white. Two of the black parents sent their children to the predominantly white schools where they were assigned in compliance with *Valley* and state that they are satisfied with the education the children are receiving and agreed to be plaintiffs only because they were requested by some of the other plaintiffs. The third black plaintiff took advantage of the majority to minority transfer system in order to have his child attend Alexandria

Senior High School, the newest school facility in the parish. Following the assignment of their children to the predominantly black schools in that district, *none* of the white parents named as plaintiffs allowed their children to attend for even a single day. Two of the plaintiffs sent their children to live with relatives elsewhere; three others sent their children to private academies; and two more moved out of the school zone to escape the assignment to the predominantly black school. With these factors in mind, we turn to consider previous federal court desegregation actions involving Rapides Parish.

The original Valley v. Rapides Parish School Board case was a class action filed in March of 1965, seeking broad injunctive and declaratory relief covering virtually all aspects necessary in desegregation of the school system. The plaintiffs in this action were black students and parents of black students attending the public schools in Rapides Parish. The United States was an active plaintiff-intervenor in that suit. A biracial committee was appointed in that case by the district court in September of 1970. This committee consisted of 11 blacks nominated by the plaintiffs and 11 whites nominated by the school board. Pursuant to a plan drafted by the Department of Health, Education and Welfare, and approved by both the school board and the biracial committee, active steps were taken to integrate the various schools in the parish.

The children in Ward 8 (the domicile of all of the plaintiffs in the present *Hines* case at the time of assignment) were assigned to Peabody High School and Jones Street Junior High School. The adopted plan led to the assignment of 501 white students and 863 black students to Peabody High, and 280 white students and 763 black students to Jones Street Junior High. Following this order and the resulting assignment, there was a public outcry and an organized boycott of Peabody and Jones Street schools by white students and their parents. Substantially less than a third of the white students assigned to these schools ever attended them. Thus, the goals sought in the implementation of the initial plan had been somewhat frustrated by these subsequent events.

As the district court points out in its opinion in this case, the problems caused by this boycott are fully aware to the parties involved in the *Valley* case. It is apparent that the *Valley* case itself is not a closed file but rather it is indeed still an active viable lawsuit under the control of the district court. It was clearly spelled out in the district court's *Valley* order of August 9, 1971, that the court had the intention of retaining active jurisdiction over that proceeding:

> This Court shall retain jurisdiction of this proceeding in order to assure that the provisions of this judgment and any other matters pertaining and incidental to the preservation of a unitary public school system in Rapides Parish, Louisiana, shall be sufficiently and effectively carried out.

In its *Hines* opinion, the district court states that the biracial committee is still operative and that it conducts regular monthly meetings, has active sub-committees, and has acted as the principle agent of the court and the school board in the enforcement of student attendance zones.

II

The district court refused to allow the *Hines* plaintiffs to proceed as class representatives and ultimately dismissed the suit. The essence of the district court's decision is that the original *Valley* plaintiffs are still active and are the proper parties to represent the interests which the *Hines* plaintiffs allege they desire to present. The court went on to state:

> We find that plaintiffs do not have a genuine interest in the improvement of schools in which black students are in a majority and regardless of whether they profess to represent the white-minority in such schools or the entire school body. We hold in effect that plaintiffs do not have a proper and common interest with either group,

and therefore cannot properly represent either of them.

The school board's motion to dismiss was then granted. This action is an appeal by the new group of parents from that dismissal order.

## III

In resolving this appeal, this court must attempt to set out a method which allows parent groups to present their complaints about the school system which results from a desegregation order without fostering a multiplicity of new lawsuits over the same complicated and emotional issues which have already once been fought out in an all too lengthy court battle. Certainly every group must be allowed the opportunity to show the court that the desired and legally required unitary school system has not been achieved by an earlier court order. We feel that there is a simple method for achieving this desired result without undue confusion and a multiplicity of lawsuits.

As pointed out above, the earlier desegregation order clearly provided that the district court in the *Valley* case retained jurisdiction "in order to assure that the provisions of this judgment *and any other matters pertaining and incidental to the preservation of a unitary public school system* . . . shall be sufficiently and effectively carried out." (emphasis supplied). The *Hines* complaint alleges that these plaintiffs seek institution of a unitary school system which they allege has failed to manifest itself under the earlier desegrega-

tion order. Their allegations seem to place them clearly within the area of jurisdiction retained by the district court in the *Valley* case.

Therefore, we feel that the proper course for parental groups seeking to question current deficiencies in the implementation of desegregation orders is for the group to petition the district court to allow it to intervene in the prior action.[1] The petition for intervention would bring to the attention of the district court the precise issues which the new group sought to represent and the ways in which the goal of a unitary system had allegedly been frustrated. The district court could then determine whether these matters had been previously raised and resolved and/or whether the issues sought to be presented by the new group were currently known to the court and parties in the initial suit. If the court determined that the issues these new plaintiffs sought to present had been previously determined or if it found that the parties in the original action were aware of these issues and completely competent to represent the interests of the new group, it could deny intervention. If the court felt that the new group had a significant claim which it could best represent, intervention would be allowed.[2]

## IV

In light of the district court's strongly worded opinion in this case we perceive no reason which would justify remanding this case to allow the plaintiffs to seek intervention. We find substantial

---

1. It appears from the transcript portion reproduced in the district court's opinion that these *Hines* plaintiffs did make an attempt to intervene in the *Valley* suit but that that motion was denied. The court's apparent rationale was that there was "final judgment" in the *Valley* case. Such a ruling is erroneous for it overlooks the broad retention of jurisdiction found in the *Valley* opinion.

2. In most school integration cases such intervention would most likely consist of the opportunity to present the claims to

the court and to any group, such as the biracial committee in this case, working under the court's supervision to achieve a unitary system and to have the allegations considered on the merits. Where a committee is involved, the court might feel it desirable to allow the new group representation on that body. This procedure would seem adequate to ensure that different points of view would be presented in the difficult and often emotional struggle to achieve the constitutionally mandated but highly · elusive unitary school system.

support for the conclusions drawn by the district court with regard to these plaintiffs. The decision of the district court is, therefore,

Affirmed.