**Herbert PATE et al., Plaintiffs,**

v.

**DADE COUNTY SCHOOL BOARD et al., Defendants.**

No. 69–1020–Civ–CA.

United States District Court,
S. D. Florida.

Aug. 3, 1978.

Frank A. Howard, Jr., Miami, Fla., for School Bd.

Norman S. Segal, Shaw & Segal, Miami, Fla., for intervenors.

Irma Robbins Feder, Miami Beach, Fla., for ACLU of Florida.

MEMORANDUM OPINION

ATKINS, Chief Judge.

On June 16, 1978, in an exercise of its continuing duty to assure the maintenance of a unitary school system in Dade County, Florida, this Court ordered the Dade County School Board, in consultation with the Bi-Racial/Tri-Ethnic Advisory Committee to select a plan to remedy violations arising from the attendance zones for Pine Lake and Richmond Elementary Schools. The Board did not seek to appeal from the Order of June 16, 1978, but instead decided to

comply with that Order; and at a public meeting on June 28, 1978, the Board adopted a plan of pairing the two schools under which grades K–3 will attend Pine Lake Elementary School and grades 4–6 will attend Richmond Elementary School.

On June 23, 1978, a group of parents of children residing within the Pine Lakes and Richmond Heights school districts moved to intervene for the purpose of appealing from the Order of June 16, 1978. The Board and the American Civil Liberties Union oppose such intervention. For the reasons set forth below, the Court denies the motion to intervene.

The intervenors assert that they are entitled to intervene for the purpose of freeing the Board from judicial restraint so as to allow it to exercise its discretion to the fullest degree constitutionally permissible, relying on *Smuck v. Hobson*, 132 U.S.App. D.C. 372, 408 F.2d 175 (1969). In the recent case of *United States v. Perry County Board of Education*, 567 F.2d 277, 279 (5th Cir. 1978), however, the Fifth Circuit declined to follow the "broad approach to intervention illustrated by the *Smuck* case," noting that

> "[i]n the context of public school desegregation, there are innumerable instances in which children, parents, and teachers may be deprived of various 'rights' (e. g., the 'right' to attend a neighborhood school) without having had the opportunity to participate directly in the judicial proceedings which divest them of those 'rights.' When these adversely affected groups have sought to intervene, we have frequently declined to permit it." [citations omitted]

The criteria applicable to a determination of the right to intervene in desegregation cases is set forth in *Hines v. Rapides Parish School Board*, 479 F.2d 762 (5th Cir. 1973). Under *Hines*, parents seeking to intervene must demonstrate an interest in a desegregated school system. *Perry, supra.* As in *Perry*, nowhere in the motion for intervention or in the memoranda in support thereof do those seeking to intervene contend that the goal of a unitary school system has been

frustrated. To the contrary, intervenors contend that a unitary system existed under the attendance zones as previously drawn and, thus, the Court has required more of the Board than is constitutionally required.

Additionally, the case presently before the Court is factually distinguishable from *Smuck*. An important factor in the District of Columbia Circuit's decision to allow intervention in that case was that Congress had recently enacted legislation to provide for the first time for an elected school board in the District of Columbia. *Id.* 132 U.S.App.D.C. at 377, 408 F.2d at 180, n.18. As a result, the appointed school board which had made the decision not to appeal from the district court's order had been superseded by a new elected Board of Education. In this context, the Court found it imperative that the new board be allowed "the fullest discretion permitted by the Constitution to reshape educational policy within the District." *Id.* 132 U.S.App.D.C. at 374, 408 F.2d at 177. Further, the new board did not oppose the intervention. In contrast, the Dade County School Board which has made the decision not to appeal this Court's Order of June 16, 1978, is the same board which must comply with the Order for the coming school year, and opposes the attempt to intervene. Thus, this case is virtually identical to *Spangler v. Pasadena City Board of Education*, 427 F.2d 1352 (9th Cir. 1970), in which the Ninth Circuit affirmed the District Court's denial of a motion to intervene by a group of parents dissatisfied with a desegregation decree and the decision of the Board of Education not to appeal.

In *Spangler*, the Court distinguished *Smuck*, and found:

> "In the case before us the decision not to appeal was in effect a decision to acquiesce in the court decree—a decision made by the very board affected by the decree. The decision was made by a board of elected representatives of the residents of the school district, including these appellants. It was made following public hearings at which appellants had

full opportunity to influence the board's decision. That decision was within the competence of the board in balancing many competing factors against the relatively modest degree of restraint imposed by the decree.

Pursuant to court decree the board has now adopted a plan for integration of the schools which has been submitted to the court and received court approval. Before us the board opposes appellants in their effort to intervene. It wishes to be free forthwith to put its plan into operation and argues persuasively that intervention and a prolongation of this suit will cause confusion and turmoil within the school district and be disruptive of their plan.

It is clear that the protectable interest of appellants in the freedom of their school board from excessive judicial interference is substantially less apparent here than it was in *Smuck*. Such restraints as were imposed have in substance been found acceptable by the board and thus create no present prejudice."

*Id.* at 1354.

■ The avowed purpose of the parents seeking intervention here is "not to substitute their judgment for that of the elected School Board, but to free the Board from judicial restraint so that it may exercise its discretion, to the fullest degree constitutionally permissible, in deciding educational policies." However, that same board, in the exercise of the same discretion which the intervenors ostensibly seek to preserve, has determined that an appeal is not in the best interests of the school system. Contrary to their protestations, the intervenors do seek to substitute their judgment for that of their elected representatives on the issue of whether compliance with this Court's Order or appeal is the better course. These parents are not entitled to intervene simply because they would have voted differently had they been members of the Board. *Perry, supra.*

■ Finally, intervenors have moved for a hearing as required by *Calhoun v. Cook*, 487 F.2d 680 (5th Cir. 1973) and *Jones v.*

*Caddo Parish School Board*, 499 F.2d 914 (5th Cir. 1974). In *Hines, supra*, the Fifth Circuit held that the proper course for groups seeking to question deficiencies in the implementation of desegregation orders is to file a petition for intervention that would bring to the attention of the district court "the precise issues which the new group sought to represent and the ways in which the goal of a unitary system had allegedly been frustrated." *Id.* at 765. When presented with such a precise petition, an evidentiary hearing is necessary to enable the court to determine if the criteria in *Hines* are satisfied, in that it must be determined whether the issues sought to be raised were properly represented by the existing parties. *Jones, supra*. The necessity for this procedure arises because "every group must be allowed the opportunity to show the court that the desired and legally required unitary system has not been achieved . . . ." *Hines, supra* at 765.

■ The motion to intervene filed in this cause is clearly not the precise petition mandated by *Hines, Calhoun,* and *Jones, supra*; and thus, intervenors have failed to meet a threshold requirement entitling them to a hearing. Further, unlike the parents in *Hines*, these intervenors have not placed themselves within the area of jurisdiction retained by this Court, since they do not allege that the goal of a unitary system has been frustrated. When such allegations have been made this Court has not hesitated to hold evidentiary hearings, and, in fact, held a lengthy evidentiary hearing prior to reaching the decision reflected in the Order of June 16, 1978; however, under the present circumstances, a further evidentiary hearing would not fulfill the role envisioned by the cases cited above and would not aid the Court's determination of the issues presently raised. Therefore, the motion for emergency hearing is also denied.

A separate Order shall be entered in accordance herewith.