**UNITED STATES of America, Plaintiff,**

v.

**The BALDWIN COUNTY BOARD OF EDUCATION, Defendant.**

**Civ. A. No. 2329–MAC.**

United States District Court, M. D. Georgia, Macon Division.

June 28, 1982.

Bernard E. Namie, III, Macon, Ga., Drew S. Days, III, Dept. of Justice, Washington, D. C., Charles A. Mathis, Jr., Thomas M. Jackson, Macon, Ga., for plaintiff.

George M. Stembridge, Jr., Milledgeville, Ga., for defendant.

**ORDER**

OWENS, Chief Judge.

This case involves the public schools of Baldwin County, Georgia, which have been operating for more than twelve years pursuant to this court's injunctive *Singleton* order entered on March 26, 1970.

On May 22, 1979, a motion to intervene was filed by a number of individual persons—all but one were parents of students

enrolled in these schools—who alleged that these public schools were still:

(a) discriminating against blacks in teacher hiring and dismissal practices,

(b) discriminating against blacks in student disciplinary practices,

(c) discriminating against blacks in the operation of its bus transportation system,

(d) discriminating against blacks in assigning students to advanced programs, and further alleged that the defendant board discriminated against Assistant Principal Olen Reaves when it failed to renew his contract. Movants also sought to proceed as representatives of two classes—(a) black elementary and high school students and (b) black teachers, counselors, administrators, and principals terminated after October 15, 1968. This court permitted intervention as to alleged discrimination in operation of the bus system but otherwise denied all motions. Upon appeal the entire case was remanded in an opinion which stated:

"*Hines v. Rapides Parish School Board*, 479 F.2d 762 (5th Cir. 1973), established guidelines for the application of Rule 24 to school desegregation cases. In Hines, this Court held that a petition for intervention should bring to the district court's attention the precise issues that the movants seek to represent and *the ways in which the goal of a unitary system allegedly has been frustrated*. Based upon the petition and accompanying complaint, the district court should then determine whether the matters raised in the plea previously have been raised and resolved and whether the issues sought to be presented by the new group currently are known to the court and parties in the initial suit. Under this analysis, if the court determines that the issues raised by movants have been determined or if it finds that the parties in the original action are aware of those issues and completely competent to represent the interests of the new group, it could deny intervention. Conversely, if the court feels that the movants have a significant claim that they best could represent, intervention would be allowed. Id. at 765."

\*    \*    \*    \*    \*    \*

"When parents move to intervene in school desegregation cases, the important constitutional rights at stake demand a scrupulous regard for due process considerations. *Jones v. Caddo Parish School Board*, 499 F.2d 914 (5th Cir. 1974). This Court has determined that intervention, rather than a separate action, is the proper vehicle for parents claiming inadequate representation to assert their rights. Denial of a plea in intervention, therefore often will deprive those parties of their only opportunity to be heard. Consequently, we adhere to our earlier decisions requiring the district court to conduct an evidentiary hearing, and to enter findings based upon an adequate record. *Jones v. Caddo Parish School Board*, 499 F.2d 914 (5th Cir. 1974). See also *United States v. Perry County Board of Education*, 567 F.2d 277 (5th Cir. 1978)." (emphasis added).

■ In footnote 4 the court also pointed out that parent groups with complaints growing out of desegregation litigation are not entitled to intervene as a matter of right, citing *Pate v. Dade County School Board*, 588 F.2d 501, 503 (5th Cir. 1979), *cert. denied* 444 U.S. 835, 100 S.Ct. 67, 62 L.Ed.2d 44.

Pursuant to this mandate this court held an evidentiary hearing on July 15, 1981, at which movants' counsel stated that "we seek to intervene on behalf of [a] class of black parents of students who are members of a class that are protected by the Court's decisions in this case ... to address the claim that the defendant Board of Education since being ordered to merge the formerly racially separate schools in 1970 has established a pattern of selective hiring and firing of teachers and other professional personnel ...." (Tr. p. 127–128). All other claims other than transportation were not pursued.

As evidence of the goal of a unitary system having been frustrated movants relied solely upon the annual reports of the defendant Board of Education to this court.

Those show that in 1970 this school system employed some 40% black and 60% white teachers and now employs some 32% black and 68% white teachers. Counsel acknowledged that he knew of nothing else that would prove it. (Tr. p. 128).

To be certain that counsel had a full and fair hearing the court allowed an additional sixty days for other evidence and briefs to be submitted. Only two depositions were taken—that of Olen Reaves, who failed to appeal from this court's adverse ruling, and of Clarice Jones Todd, who was hired as a recent college graduate and terminated when it was learned that she had not graduated and was not qualified as a teacher.

Movants suggest only that the goal of a unitary system has been frustrated by the board's failure to maintain a 40% black—60% white ratio among its teachers, but in doing so present no evidence of the change having resulted from discriminatory practices.

Every school operated by this school board is today racially mixed and the faculty of every school is racially mixed, to wit:

|  | Students | | | Faculty and Staff | | |
|---|---|---|---|---|---|---|
|  | Black | White | Other | Black | White | Other |
| Baldwin High School | 696 | 422 | 5 | 17 | 52 | 0 |
| Boddie Junior High School | 489 | 300 | 3 | 24 | 19 | 0 |
| Carver Elementary School | 223 | 257 | 2 | 8 | 19 | 0 |
| Davis Middle School | 272 | 243 | 3 | 10 | 20 | 0 |
| Harrisburg Elementary | 158 | 112 | 0 | 9 | 9 | 0 |
| Northside Elementary | 279 | 309 | 4 | 7 | 24 | 0 |
| Midway Elementary School | 339 | 252 | 1 | 8 | 24 | 0 |
| Southside Elementary | 367 | 214 | 3 | 9 | 21 | 1 |
| West End Elementary | 370 | 266 | 2 | 8 | 27 | 0 |
| Totals | 3193 | 2375 | 23 | 100 | 215 | 1 |
|  | (57%) | (42%) | (.41%) | (32%) | (68%) | (.3%) |

report of defendant board for 1981–82.

With due regard for the natural desire of the black movants to cause more black teachers to be given the good jobs that we know teachers have, the decrease from 40% to 32% in the number of black teachers does not begin to establish that the goal of a unitary Baldwin County school system has been frustrated by the defendant board.

The appellate courts have repeatedly held that a school board is not required to forever maintain the same black-white teacher ratio that existed when faculty desegregation first took place. "*Singleton*[1] does not require that such ratios be maintained permanently; rather, it 'contemplates an initial reassignment so that the racial ratio at every school reflects the systemwide ratio, followed by the utilization of a nondiscriminatory hiring, firing, and assignment policy thereafter.' *United States v. Wilcox County Bd. of Educ.*, 5 Cir., 1974, 494 F.2d 575, 580, *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306." *United States v. DeSoto Parish School Bd.*, 574 F.2d 804, 819 (5th Cir. 1978). (footnote added).

Faculty desegregation was dealt with and resolved in this court's 1970 *Singleton* decree. The United States has been presented the reports filed with this court, has been made aware of the issue movants seek to raise and, based upon this court's prior experience, is highly competent to represent the interests of these parents in the faculty of these schools if the United States believes there is a need for such representation.

Given more than six months to prepare for an evidentiary hearing and two months thereafter to supplement the record, these

1. No *Singleton* violation is even here alleged.

parent-movants have produced virtually nothing other than what is found in this court's file in their effort to carry the minimal burden of proof which is theirs.

> "... notwithstanding the liberalizing 1966 amendment of Rule 24(a) the burden of establishing inadequate representation—though the burden 'should be treated as minimal'—remains on the proposed intervenor. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630 [636 n. 10], 30 L.Ed.2d 686 (1972). Furthermore, a presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interest of the absentee. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1909, at 528–29 (1972); see *Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 689, 81 S.Ct. 1309, [1312–13] 6 L.Ed.2d 604 (1961) (dictum)."

*Commonwealth of Pa. v. Rizzo*, 530 F.2d 501, 505 (3rd Cir. 1976).

■ The United States in this court's best judgment has furnished and will continue to furnish adequate representation of the parents, students, and teachers of the defendant school system. In the alternative, considering the lack of evidence produced by these parents it is this court's best judgment that these parents are not parties who will fairly and adequately protect the interests of a class of black teachers. Rule 23(a), Federal Rules of Civil Procedure. *See, General Telephone Company of the Southwest v. Falcon*, —— U.S. ——, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

Obedient to the mandate of the court of appeals and to *Hines v. Rapides Parish School Board*, 479 F.2d 762 (5th Cir. 1973), these parent-movants have had their days in court but have failed to show that they should be allowed to intervene on this additional issue. Further intervention is thus denied.