UNITED STATES of America,
Plaintiff-Appellee,

v.

CRUCIAL, et al.,
Plaintiffs-Intervenors-Appellants,

WEST ODESSA PARENTS FOR QUALITY NEIGHBORHOOD SCHOOLS, et al., Movants-Appellants,

v.

ECTOR COUNTY INDEPENDENT SCHOOL DISTRICT, et al.,
Defendants-Appellees.

No. 82–1444.

United States Court of Appeals,
Fifth Circuit.

Dec. 29, 1983.

---

Norma V. Cantu, MALDEF, Jose Garza, Judith A. Sanders-Castro, José Roberto Juarez, Jr., San Antonio, Tex., Joaquin G. Avila, Morris J. Baller, San Francisco, Cal., for CRUCIAL, et al.

J. Harvie Wilkinson, III, Asst. Atty. Gen., Wm. Bradford Reynolds, Walter W. Barnett, Marie E. Klimesz, Civil Rights Div., Dept. of Justice, Washington, D.C., for the United States.

McMahon, Cox, Todd, Tidwell, Locke, Robert B. Cox, Jack Q. Tidwell, Odessa, Tex., Kelly Frels, Houston, Tex., for Ector County Independent School Dist.

Eskew, Muir & Bednar, William C. Bednar, Jr., Austin, Tex., for West Odessa PQNS.

Before RANDALL, JOHNSON and WILLIAMS, Circuit Judges.

RANDALL, Circuit Judge:

Ector County Independent School District is a county-wide school district encompassing all of Ector County, Texas, and including the City of Odessa. A railroad track divides the northern and southern sections of Odessa. The black and hispanic populations are concentrated in south Odessa.

During the period between 1968 and 1982, when formerly *de jure* dual school systems (such as Ector County ISD) were charged under *Brown v. Board of Education of Topeka,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), and *Green v. County School Board of New Kent County,* 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), to take all action necessary to convert to unitary systems, the percentage of minority enrollment in south Odessa schools increased from 87.4% in 1967–68 to 96.4% in 1980–81.[1] Confronted with that fact and with segregative assignment of faculty and administrators, segregative bus transportation of students and other segregative post-*Brown* actions of the Ector County ISD, the district court, in comprehensive and detailed findings of fact and conclusions of law which can only be described as a model and which are unchallenged on appeal, held that the Ector County ISD "not only continued to fail to meet its duty to dismantle its dual school system, but actually increased the segregation in its schools of both Blacks and

---

1. While the hispanic population remains concentrated in south Odessa, many hispanic families have located in certain areas of north Odessa and in rural areas outside of Odessa. Thus, while the percentage of minority enrollment in south Odessa's schools has increased, the number of predominately anglo schools in north Odessa has decreased, from 21 in 1967–68 to five in 1980–81.

Mexican-Americans," and held further that Ector County ISD's actions and inaction in this respect had been intentional.

At this point, the case took an unexpected turn. Despite overwhelming evidence at an extensive liability hearing of a particularly egregious pattern of intentional segregation by Ector County ISD, the district court adopted a desegregation plan, stipulated to by Ector County ISD and by the United States but forcefully objected to by plaintiff-intervenor CRUCIAL (Committee for Redress, Unity, Concern and Integrity at All Levels), without holding an evidentiary hearing to consider that plan and without making any findings of fact or conclusions of law addressed to that plan or any alternative. The plan accepted by the district court had as its two key features the adoption of a largely undeveloped magnet school program for the elementary schools and the closing of the all-minority junior and senior high schools in south Odessa. CRUCIAL appeals the district court's adoption of the stipulated plan. For the reasons set forth below, we reverse the district court's order adopting the plan and remand for proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY.

This action was originally filed in August, 1970, by the United States (appellee, with Ector County ISD, herein) against Ector County ISD and several other school districts. The claim against Ector County ISD was brought pursuant to Title IV of the Civil Rights Act of 1964, 42 U.S.C. § 2000c–6 (1976), and the fourteenth amendment. Shortly thereafter, Ector County ISD and the United States announced that they had reached a settlement. The district court entered an interim order requiring the desegregation of the Odessa school system, which provided that Ector County ISD was to announce and implement the following measures:

1) Assign classroom teachers so that no schools would be racially identifiable as a school intended for white or black students;

2) Conduct hiring, assignments, promotions, pay, demotions, dismissals and other treatment of staff without regard to race, color or national origin;

3) Base dismissals or demotions of staff or administration on objective and reasonable non-discriminatory standards;

4) Extend the majority-minority policy to include all elementary students;

5) Redesign bus routes and student assignments to insure transportation on a non-segregated basis;

6) Conduct site selection and new school construction in a manner to prevent the recurrence of the dual structure;

7) Grant transfers to schools outside the district only on a non-discriminatory basis, except that transfers were to be denied if the cumulative effect was to impair desegregation;

8) Refrain from conducting any classroom, non-classroom or extra-curricular activities on a segregated basis.

*See* Record Vol. I at 38–41.

Thereafter, the case remained dormant until February 1981, when CRUCIAL filed a motion to intervene pursuant to Fed.R. Civ.P. 24, which was granted. CRUCIAL's Complaint in Intervention alleged that Ector County ISD had failed to comply with the district court's interim order of August, 1970, in that Ector County ISD continued to operate a segregated, dual school system. CRUCIAL also alleged that Ector County ISD had failed to fashion an educational program that would meet the demands of its minority students.

On October 19, 1981, the district court granted the motion of West Odessa Parents for Quality Neighborhood Schools ("West Odessa PQNS") for leave to participate as *amicus curiae,* and trial on the merits commenced. The trial lasted from October 19 to October 28, 1981. At that time, the court announced its tentative opinion that Ector County ISD continued to operate an unconstitutionally segregated school system, and ordered the immediate reassignment of faculty as well as immediate implementation of a program to expand the curriculum at Ector High School.

On April 1, 1982, the district court announced in open court its Findings of Fact

and Conclusions of Law, which were filed in written form on May 28, 1982. Judgment was entered on April 12, 1982, in favor of CRUCIAL and the United States, and Ector County ISD was ordered to submit a proposed desegregation plan to the court by April 15, 1982, to which CRUCIAL, the United States, and West Odessa PQNS would have fourteen days to respond. At the April 1, 1982 proceeding, CRUCIAL filed a proposed plan of its own, and immediately subsequent to the court's announcement of its findings, presented the plan through the testimony of Dr. Elmer Tossie, an expert in the area of school desegregation who had helped in the preparation of the plan.

Ector County ISD filed a desegregation plan on April 13, 1982, to which the United States, CRUCIAL, and West Odessa PQNS responded. Although this plan does not form part of the record, the responses to it indicate that it consisted of the closing of the only senior high school in south Odessa, which was virtually all-minority, to which both CRUCIAL and the United States objected; the closing of south Odessa's only junior high school (also virtually all-minority), to which CRUCIAL objected and the United States did not; and the conversion of the former junior high school into an elementary magnet school, to which both CRUCIAL and the United States objected on the basis that, while innovative programs were commendable, this aspect of the plan failed to desegregate the remaining four minority elementary schools in south Odessa. *See* Record Vol. III at 87 & 88. At the court's request, the parties continued negotiations concerning a remedial plan.

On July 19, 1982, West Odessa PQNS filed a motion for leave to intervene. Both Ector County ISD and the United States opposed the motion, and it was denied on August 18, 1982, with the proviso that West Odessa PQNS could continue to participate in the case as *amicus curiae*. West Odessa PQNS appeals the district court's denial of this motion.

On July 29, 1982, the United States and Ector County ISD entered into a stipulation agreeing on a desegregation plan that, with the exception of an expanded elementary magnet school program, was apparently similar to the one proposed by Ector County ISD in April and objected to by the United States at that time. The details of the stipulated plan are discussed *infra* at II(A). Both CRUCIAL and West Odessa PQNS objected to the stipulated plan. On August 6, 1982, the district court entered an order approving and adopting the stipulated plan verbatim and ordered its immediate implementation. CRUCIAL unsuccessfully sought a stay of the district court's order, and now appeals.

## II. ISSUES ON APPEAL.

### A. The Adoption of the Stipulated Plan.

 Following the liability hearing, the district court found that Ector County ISD's actions during the 1960's and 1970's with regard to student assignments, transportation of students, school closures and reassignment of pupils, faculty and staff assignments, the creation of disparate feeder patterns, and the opening of numerous all-anglo or all-minority schools contributed to and increased the segregation in its school system. In these circumstances, the Supreme Court's mandate is clear: school boards operating a dual system, as Ector County ISD was found to do here, are

> clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination [is] eliminated root and branch.... The burden on a school board today is to come forward with a plan that promises realistically to work, and promises realistically to work *now.*

*Green v. County School Board of New Kent County,* 391 U.S. 430, 437–39, 88 S.Ct. 1689, 1693–95, 20 L.Ed.2d 716 (1968) (emphasis in original). The burden falling to the district court in such a case

> is to assess the effectiveness of a proposed plan in achieving desegregation. There is no universal answer to complex problems of desegregation; there is obviously no one plan that will do the job in every case. *The matter must be assessed*

*in light of the circumstances present and the options available in each instance.* It is incumbent upon the school board to establish that its proposed plan promises meaningful and immediate progress toward disestablishing state-imposed segregation. *It is incumbent upon the district court to weigh that claim in light of the facts at hand and in light of any alternatives which may be shown as feasible and more promising in their effectiveness.* *Id.* at 439, 88 S.Ct. at 1694 (emphasis added). In the present case, the issue before us is whether the district court fulfilled its responsibility under *Green* in approving the plan stipulated to by the United States and Ector County ISD, without a remedial hearing and over CRUCIAL's objection.

As previously noted, CRUCIAL presented its own proposed plan at the time the district court announced its findings and conclusions. At the conclusion of Dr. Tossie's explanation of CRUCIAL's plan, Ector County ISD declined to cross-examine him, reserving its questions for "a later date." *See* Record Vol. V at 165. The United States and West Odessa PQNS both questioned Dr. Tossie. The transcript of the proceedings, however, clearly reflects that all parties anticipated further remedial hearings and a full airing of all proposals. *See generally* Record Vol. V at 175–99.

On June 10, 1982, the district court and the parties participated in a telephone conference. At that time, Ector County ISD and the United States apparently had agreed to and submitted a tentative plan to the court. CRUCIAL's proposal had already been submitted. It is clear that the parties and the court still anticipated that further remedial proceedings would take place before the court approved any proposal. *See* Record Vol. V at 210–13, 215–16. At the conclusion of the telephone conference, the court told the parties to try and settle on a plan before June 30, 1982, and, if no settlement could be reached, an evidentiary hearing would be held during the first week of July, 1982. *See id.* at 216–19. As we have previously recounted, the district court on August 6, 1982 adopted the plan stipulated to on July 29 by the United States and Ector County ISD. No evidentiary hearing was held, despite CRUCIAL's objections to the stipulated plan and even though the court itself noted, in its judgment of May 28, 1982, that "[t]he specific remedies that would be appropriate here can be determined only on a more complete record...."

The plan that was stipulated to and adopted by the district court provides, *inter alia,* for the use of two primary desegregation tools: the establishment of magnet schools at the elementary level; the conversion of Ector High School (the all-minority high school) into a junior high school, with its senior high students to be transferred to Permian and Odessa (the all-anglo high schools); and the conversion of Blackshear Junior High (all-minority) to an elementary magnet school.[2] The elementary school magnet program is to be implemented in two phases, the first in 1983–84 and the second in 1984–85. The plan further provides that "[e]valuation of the magnet school program as a tool for desegregation shall occur two years after implementation of the magnet schools program at Hays and Blackshear (i.e. after the 1984–85 school year)." Plaintiff's Exhibit 2 at 21.

The plan proposed by CRUCIAL provides for student reassignment; busing of elementary and secondary school students (including a detailed time-and-distance study); and pairing of non-contiguous school zones. The United States apparently also submitted a proposed plan, in July of 1981, which CRUCIAL asserts provided a "pro-

---

**2.** In addition to the features discussed in text, the stipulated plan provides a full-service academic program for the secondary schools; special education; computer-assisted instruction and "Rooms of Fifteen" programs in the elementary schools; parental involvement program; staff training program; reassignment of faculty and staff to reflect a per-school tri-eth- nic ratio consistent with the district's tri-ethnic ratio; the redrawing of attendance zone lines; the filing of an annual report by Ector County ISD; and a majority-to-minority transfer system. The plan also provides generally that busing, school construction, and extracurricular activity planning shall be conducted on a non-discriminatory basis.

gram for pairing minority schools with non-minority schools." *See* Brief for Appellant CRUCIAL at 34.[3] Dr. Tossie's testimony on April 1, 1982 was to some extent based on a comparison of CRUCIAL's and the government's proposed plans. *See* Record Vol. V at 156–58, 165–69.

 Ector County ISD's failure to institute a constitutionally mandated unitary school system between 1954 and 1982 brings into play the full array of the district court's remedial authority. *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); *Valley v. Rapides Parish School Board,* 702 F.2d 1221 (5th Cir.1983). The court's responsibility, upon its finding of liability, is to purge the school system of the vestiges of unlawful segregation. *See Swann, supra; Green, supra; Lee v. Macon County Board of Education,* 616 F.2d 805 (5th Cir. 1980). Our review of the district court's remedial measures focuses on the determination whether the court abused its discretion. *See Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); *Swann, supra.* As we noted in *Valley v. Rapides Parish, supra,* "[w]e are mindful that 'the scope of a district court's equitable power to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.'" 702 F.2d at 1225 (quoting *Swann,* 402 U.S. at 15, 91 S.Ct. at 1275).

 In this case, despite the deferential standard we employ, we think it abundantly clear that the district court's action in adopting the stipulated plan constituted an abuse of discretion in light of its duty under *Green.* As the court's findings of fact demonstrate, Ector County ISD's violation of the constitution was not only clear but egregious. Its repeated failure to develop and institute an effective desegregation plan, which resulted not only in continued segregation but also in increased segre-

gation at the time its liability was adjudged by the district court, mandated the immediate and careful consideration of all the proposed remedies. *See Green,* 391 U.S. at 439, 88 S.Ct. at 1694.

Whether the plan adopted by the court "promises realistically to work, and promises realistically to work *now,*" *id.,* and is the most effective vehicle for the realization of this standard are questions that, in this case and on this record, we cannot adequately evaluate. Nor are we able to evaluate CRUCIAL's substantive challenges to the stipulated plan. CRUCIAL asserts that the use of magnet school programs at the elementary level does not ensure effective desegregation of the elementary schools because such programs have not proved to be a successful desegregation technique. CRUCIAL also objects to the stipulated plan's failure to implement the magnet programs on a district-wide basis, and to the alleged "undue delay" in the implementation of the magnet programs. With regard to the secondary schools, CRUCIAL contends that under the stipulated plan, the district's minority children must shoulder a disproportionate share of the burden of desegregation. CRUCIAL specifically challenges the closure of the only high school and junior high school in south Odessa.[4]

Although the district court's factual findings with regard to liability are explicit, it made no findings at all with regard to the efficacy of the plan it adopted; nor did it make any comparative findings. What testimony the court did hear with regard to the proposed closure of schools and the effectiveness of magnet programs as a desegregation device was negative as to both proposals. *See* Record Vol. V at 156–58, 165–69 (testimony of Dr. Tossie). Without explicit findings, therefore, we have no ba-

---

**3.** The plan proposed by the United States is not part of the record, although the parties' responses to it are. We note that these responses are listed in the docket sheet of the Record on Appeal but the documents themselves are missing. *See* Record Vol. II at 42–43. Because of our disposition of this case, however, the absence of these documents does not affect our analysis. We note it merely to emphasize the

apparent lack of deliberation called for in the remedial phase of this case.

**4.** We note that CRUCIAL made these objections to the district court on August 5, 1982, just seven days after the stipulated plan was agreed to. The district court adopted the stipulated plan verbatim on August 6, 1982.

sis for evaluating the degree to which the plan adopted was "reasonably related to the ultimate objective" of desegregation. *Valley v. Rapides Parish School Board,* 646 F.2d 925, 938 (1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1430, 71 L.Ed.2d 650 (1982). The provisions of the plan adopted make the need for explicit findings particularly pressing.[5] Both school closures[6] and magnet programs as desegregation techniques require careful scrutiny by the district court. *See, e.g., Davis v. East Baton Rouge Parish School Board,* 721 F.2d 1424 (5th Cir.1983) (magnet program properly rejected when full implementation would require three years and reasonable alternatives existed); *Ross v. Houston Independent School District,* 699 F.2d 218 (5th Cir.1983); *United States v. Texas Education Agency (Port Arthur ISD),* 679 F.2d 1104 (5th Cir.1982); *Valley v. Rapides Parish School Board,* 646 F.2d at 940 ("The district court must explicitly state its justification for ordering a school closed, in order that we may properly [determine whether the order was an abuse of discretion]"). In this regard, we note that the stipulated plan's magnet program will not be fully implemented until 1984–85; and its effectiveness with regard to desegregation will not be evaluated until 1985.

The extent to which the district court must conduct a detailed evidentiary hearing culminating in explicit comparative findings is demonstrated by our two most recent decisions in the *Valley v. Rapides Parish School Board* case, 702 F.2d 1221 and 646 F.2d 925. In the earlier of these, we remanded the case to the district court for an examination of the relative effectiveness of the proposed plan, noting the need for the court to "explicitly state" its reasons for adopting one plan instead of another. 646 F.2d at 940. On remand, the district court made such findings, and in our later opinion we affirmed its adoption of a plan, noting that the court had "reviewed and rejected various alternatives proposed by the parties...." 702 F.2d at 1224. We also stated:

> Consistent with *Milliken* [*v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977)]'s teachings, a remedial order must be carefully tailored to correct the constitutionally infirm condition, restore the victims of segregation to the positions they would have enjoyed absent the proscribed conduct, and, where congruent with constitutional precepts, accommodate the interest of school officials in administering their affairs without judicial interference.

*Id.* at 1226. The district court's order in that case, unlike here, provided us a sufficient basis upon which to conclude that such "careful tailoring" had been accomplished. Thus, we concluded by noting that "[t]he record in this case supports the [district] court's conviction that of all the proposals offered, its plan can best be expected to achieve the mandated conversion to a unitary system." *Id.* at 1230. *See also Davis v. East Baton Rouge Parish School Board,* 570 F.2d 1260, 1263–64 (5th Cir.1978) ("As this court has repeatedly stated, 'The findings and conclusions we review must be expressed with sufficient particularity to allow us to determine rather than speculate that the law has been correctly applied'") (quoting *Golf City, Inc. v. Wilson Sporting*

---

**5.** Although Ector County ISD refers us to *United States v. Texas Education Agency (Port Arthur ISD),* 679 F.2d 1104, 1108 (5th Cir.1982), for the proposition that a stipulated desegregation plan is entitled to a "presumption of validity," we note that such a presumption operates when *all* parties stipulate to the plan. Where, as here, one of two parties plaintiff does not stipulate but instead objects to the plan in question, we do not consider *Port Arthur* apposite. While Ector County ISD refers to itself and the United States as "the principal parties" in the case, we do not agree with this characterization. That CRUCIAL is an intervenor in rather than original initiator of this action does not serve to exclude it from the class of "principal" parties. This is particularly true in the present case because it was CRUCIAL that rekindled this case in 1981. In any case, the burden of justifying its proposed desegregation plan rests clearly and squarely upon the school board. *See Green, supra,* 391 U.S. at 439, 88 S.Ct. at 1694.

**6.** While neither Ector nor Blackshear is to be literally closed, both will cease to function in their present capacities. South Odessa will have no senior high school. We consider these actions, with regard to Ector and Blackshear, equivalent to closures.

*Goods Co.,* 555 F.2d 426, 433 (5th Cir.1977)). We can reach no such conclusion here.

### B. *Intervention by West Odessa PQNS.*

On appeal, West Odessa PQNS contends that the district court erred in denying it leave to intervene in this action, either as of right pursuant to Fed.R.Civ.P. 24(a),[7] or permissively pursuant to Fed.R.Civ.P. 24(b).[8] In addition, West Odessa PQNS argues that in either case it was entitled to a hearing before the district court denied its motion. Because our disposition of this last contention renders consideration of the first two unnecessary, we examine it first.

West Odessa PQNS contends that neither CRUCIAL's proposed plan nor the stipulated plan adequately represents its interests insofar as both plans allegedly impose an unfair and disproportionately heavy share of the transportation burden on west Odessa's children, who West Odessa PQNS asserts are being used as "desegregation fodder." West Odessa PQNS also objects to Ector County ISD's failure to construct more schools in West Odessa. CRUCIAL, Ector County ISD, and the United States oppose West Odessa PQNS' proposed intervention, asserting that to the extent it seeks to challenge Ector County ISD's failure to build more schools in West Odessa, West Odessa PQNS seeks to raise issues that are not properly part of a desegregation case; that CRUCIAL adequately represents the interests of all of Odessa's schoolchildren; that West Odessa PQNS' motion was not timely filed; that West Odessa PQNS' status as *amicus curiae* has afforded it an ample opportunity to air its concerns; and that the proposed intervention raises no new issues in the case.

■ West Odessa PQNS is an organization of parents. "When parents move to intervene in school desegregation cases, the important constitutional rights at stake demand a scrupulous regard for due process considerations." *Adams v. Baldwin County Board of Education of Baldwin County, Georgia,* 628 F.2d 895, 897 (5th Cir.1980). This court has several times set forth the procedure by which this "scrupulous regard" is to be manifested. In *Hines v. Rapides Parish School Board,* 479 F.2d 762, 765 (5th Cir.1973), we held that a petition for intervention in a school desegregation case should bring to the district court's attention the precise issues that the putative intervenors seek to represent, and the manner in which the challenged plan fails to realize the goal of a unitary system. The court must then determine the extent to which these issues have already been raised and resolved, and the extent to which such issues are known to the court and the original parties. If the court finds that the issues have been resolved, or that the current parties are aware of and competent to represent the interests of the putative intervenors, denial of intervention is proper. On the other hand, if the court determines that the petitioner has a significant claim that it can best represent, intervention should be granted.

■ Subsequent to *Hines* we have repeatedly made it clear that the district court's disposition of a proposed intervention must be "supported by findings based upon an adequate record." *Adams v. Baldwin County Board of Education, supra; see also United States v. Perry County Board of Education,* 567 F.2d 277, 280 (5th Cir. 1978); *Jones v. Caddo Parish School Board,*

---

7. Fed.R.Civ.P. 24(a) provides:

*Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

8. Fed.R.Civ.P. 24(b) provides:

*Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

499 F.2d 914, 917 (5th Cir.1974); *Calhoun v. Cook,* 487 F.2d 680, 684 (5th Cir.1973); *Lee v. Macon County Board of Education,* 482 F.2d 1253, 1254 (5th Cir.1973). In general, to the extent that the putative intervenors raise issues properly cognizable in a school case, and do so by submitting pleadings that conform to the guidelines established in *Hines,* an evidentiary hearing should be held by the district court to aid its assessment of the proposed intervention. *See Adams v. Baldwin County Board of Education, supra.* An exception to the hearing requirement applies where the petitioners allege matters unrelated to desegregation and therefore inappropriate in a school case. *See, e.g., United States v. Perry County Board of Education,* 567 F.2d at 279–80 (denial of intervention without hearing proper where intervenors sought to challenge construction site of new school).

■ In the instant case, the district court's order denying intervention rested on no findings at all, nor did the court conduct an evidentiary hearing. The court's failure to make findings constitutes error and mandates that the matter of the proposed intervention be remanded for such findings. We intimate no view as to the merits of West Odessa PQNS' petition or the parties' objections thereto. Rather, our remand is intended to result in findings by the district court as mandated by *Hines* and its progeny.

With reference to the district court's failure to hold an evidentiary hearing, we note that to the extent that West Odessa PQNS' petition raises matters inappropriate in a school case, it may be possible for the district court to rule on its motion—with findings—on the pleadings alone. *See Perry County Board of Education, supra.* However, because West Odessa PQNS' petition also clearly raises issues that we have in other cases found to justify a hearing, *see Adams, supra,* we hold that the district court erred in failing to conduct such a hearing in this case.

The court's determination should be made within a time frame sufficient to allow West Odessa PQNS to participate meaningfully in remedial proceedings should its intervention be permitted.

### III. CONCLUSION.

■ The judgment of the district court is reversed and this case is remanded to the district court with instructions to hold a hearing on the stipulated plan and on all alternatives that have been or may be proposed. While delay in achieving effective desegregation and uncertainty about whether a proposed plan will, in fact, achieve desegregation have been unacceptable flaws in any school desegregation plan since *Green,* they would be particularly so in any plan for Ector County. In school desegregation cases, the nature and scope of the violation determine the appropriate remedy, *see Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 17, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). Because the district court's unchallenged findings reflect a particularly egregious pattern of intentional segregation by Ector County ISD extending into the 1981–82 school year, the mandate of *Green* that the court adopt a desegregation plan that promises to work and work now has a particular urgency in this case. If the district court decides to adhere to the stipulated plan or if it decides to adopt a different one, detailed findings enumerating its reasons for so deciding must be set forth in writing. The court's findings should specifically reflect why the plan it elects to adopt, when compared with each of the alternatives, is the one with the most realistic promise of working and working now. *See Green, supra.* The court's hearing and entry of findings are to be accomplished by April 1, 1984. The stipulated plan will remain in force until such time as it may be amended or replaced below.

The case is REVERSED and REMANDED for proceedings consistent with this opinion.