**Alfreda TRAHAN, et al.**

v.

**LAFAYETTE PARISH SCHOOL BOARD.**

Civ. A. No. 10–903 "L".

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

June 26, 1985.

D. Warren Ashy, Victor A. Ashy, Michael Durand, Lafayette, La., for petitioners.

Michael Darnell, St. Martinville, La., Napoleon Williams, New York City, for plaintiffs.

John Ward, Baton Rouge, La., for defendant.

## MEMORANDUM RULING

DUHE, District Judge.

Lafayette Parish Schools have for several years operated under a standing desegregation order of this Court in order to complete the transition from formerly dejure segregated schools to a unitary system as required by the U.S. Supreme Court in *Brown v. Board of Education of Topeka,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) and *Green v. County School Board of New Kent County,* 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). Defendant Lafayette Parish School Board now moves to amend the standing desegregation order to permit the rezoning of school attendance districts in Lafayette Parish. The motion is unopposed by any of the plaintiffs in this action. However, a number of third parties have petitioned this Court for leave to intervene in order to oppose the School Board's motion.

## I. THE PETITIONS FOR INTERVENTION

Interventions are governed by Federal Rule of Civil Procedure 24 and the Federal Common Law. In *Hines v. Rapides Parish School Board,* 479 F.2d 762 (5th Cir. 1973), the Court established the prerequisites for an intervention in a desegregation suit:

The proper course for parental groups seeking to question current deficiencies in the implementation of desegregation orders is for the group to petition the district court to allow it to intervene in the prior action. The petition for intervention would bring to the attention of the district court *the precise issues* which the new group sought to represent and *the ways in which the goal of a unitary system had allegedly been frustrated.* The district court could then determine whether these matters had been previously raised and resolved and/or whether the issues sought to be presented by the new group were currently known to the Court and parties in the initial suit. If the Court determined that the issues these new plaintiffs sought to present had been previously determined or if it found that the parties in the original action were aware of these issues and *completely competent to represent the interests of the new group, it*

*could deny intervention.* If the court felt that the new group had a significant claim which it could best represent, intervention would be allowed. 479 F.2d at 762. (emphasis added).

In the facts at bar are three groups petitioning to intervene. They are, respectively, the Daspit group (filed April 23), the Bakeler group (filed April 24), and School Board member John Guidry (filed April 24). The initial question presented, then, is whether these petitions for intervention satisfy the requirements of *Hines* and its progeny.

### The Daspit Group

■ The Daspit group's petition for intervention is "primarily educational and not constitutional". Memorandum in Support of Objection, p. 2. The petitioners simply believe that their proposal for district boundaries for the Judice Middle School is sounder as a matter of policy than that proposed by the School Board in its motion.

It is apparent that this petition fails to satisfy *Hines,* for "nothing in their brief or in their petition for intervention ... indicates that they are challenging [the boundaries] on the ground that it impedes the establishment of a unitary school system. Instead, they oppose the location on various policy grounds, which, though important, are unrelated to desegregation and the establishment of a unitary school system." *United States v. Perry County Board of Education,* 567 F.2d 277, 279–80 (5th Cir.1978).

### The Bakeler Group

■ This group petitions the Court for leave to intervene on the grounds that the School Board's proposed rezoning plan: (1) violates their 14th Amendment rights; (2) is unnecessary; and (3) if it is necessary, it can be accomplished in a "superior" manner through alternative plans it submits.

This petition utterly fails to meet the requirements of *Hines* for intervention in a desegregation action. The assertion, in conclusionary form, and without supporting argument, explanation, or legal authori-

ties, that the School Board rezoning plan would abridge petitioners' 14th Amendment rights is simply not sufficient to constitute an allegation, much less a showing, that the goal of a unitary system would be frustrated by adoption of the School Board plan. In *Calhoun v. Cook,* 487 F.2d 680 (5th Cir.1973), the Court emphasized:

the absolute necessity that the petition for intervention contain such a clear delineation of the contentions of the intervenors as would remove all doubt that the Court would be able to determine the validity of the attempted intervention, or, if the intervention were allowed, the merits of the claim asserted. 487 F.2d at 683.

Petitioners' remaining arguments—that the School Board's rezoning plan is unnecessary, or alternatively that if rezoning is necessary there are less onerous means of achieving the same end—are similarly per se insufficient to permit intervention. The question of whether rezoning is necessary is immaterial to the question of whether the School Board's rezoning plan frustrates the goal of a unitary system. As to whether there are less onerous means of rezoning, "[t]hese matters of policy are to be determined by the Board of Education, not by the Federal Courts" *Perry,* supra, 567 F.2d at 280.

Like the Daspit petitioners, nothing in the Bakeler Group's petition indicates that rezoning is challenged on the grounds that it impedes the establishment of a unitary school system. Instead, rezoning is opposed on various policy grounds, which, though important, are unrelated to desegregation and the establishment of a unitary school system.

### The Guidry Petition

School Board member John Guidry's petition for intervention is essentially identical to the Bakeler Group's petition and thus fails for the same reasons.

### The Question of Standing

■ In addition to the failure of all petitioners to meet the *Hines* requirements in

their petitions, intervention must be denied because:

In these circumstances the interests of [petitioners] are adequately represented by the Board and the bi-racial committee within the meaning of Rule 24(a)(2). [Petitioners] are not entitled to intervention of right simply because they would have voted differently had they been members of these representative bodies. *Perry*, 567 F.2d at 280.

### The Hearing Requirement

■ The general rule in this Circuit is that:

to the extent that putative intervenors raise issues properly cognizable in a school case, and do so by submitting pleadings that conform to the guidelines established in *Hines*, an evidentiary hearing should be had by the district court to aid its assessment of the proposed intervention [citation omitted]. An exception to the hearing requirement applies where the petitioners allege matters unrelated to desegregation and therefore, inappropriate in a school case. See, e.g., *U.S. v. Perry County Board of Education*, 567 F.2d at 279–80 (denial of intervention without hearing proper where intervenors sought to challenge construction site of new school). *United States v. Crucial*, 722 F.2d 1182, 1191 (5th Cir. 1983).

All petitioners having alleged matters unrelated to desegregation, denial of intervention without a hearing is appropriate in the instant case.

### II. THE BOARD'S REZONING PLAN

■ In order to make allowances for suburban school enrollment growth and for a continuing decline in inner city school enrollment, the School Board has moved to amend this Court's desegregation order to permit rezoning.

The motion is unopposed by any of the plaintiffs, and has been endorsed by the bi-racial committee. After a careful review of the record, movant's supporting exhibits, arguments and authorities, this Court is satisfied that the School Board's rezoning plan is consistent with a unitary system.

This Court's determination that the School Board's rezoning plan passes Constitutional muster should in no way be construed as a judgment on the policy merits of that particular plan. The people themselves—through their elected representatives on the School Board—have made that judgment.

This Court cannot and will not become involved in the day-to-day administration of the Lafayette Parish schools, substituting its views on policy questions for that of the duly elected representatives of the people. Even if this Court had the necessary expertise and resources to become so involved—which it assuredly does not—it is constrained by the Constitution of the United States. The 10th Amendment to that fine document declares that: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The administration of the public schools of the several states is clearly not a power delegated to the Federal Government or its courts.

Accordingly, the School Board's motion to amend the standing desegregation order to permit rezoning is granted, and the petitions of the Daspit Group, the Bakeler Group, and John Guidry to intervene are denied.