Eddie Mitchell TASBY, et al., Plaintiffs,

v.

Marvin EDWARDS, General Superintendent, Dallas Independent School District et al., Defendants.

Civ. A. No. 3–4211–H.

United States District Court, N.D. Texas, Dallas Division.

April 22, 1992.

Edward B. Cloutman, Mullinax Wells Baab & Cloutman, Dallas, Tex., for plaintiffs.

Robert H. Thomas and P. Michael Jung, Strasburger & Price, Dallas, Tex., for defendants.

E. Brice Cunningham, Dallas, Tex., for intervenor.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

On April 6–7, 1992, the Court held an evidentiary hearing on the Motion of the Dallas Independent School District ("DISD") to Relocate Montessori I at G.B. Dealey in 1992–93, and related pleadings and briefs.[1] The School District asks the Court to relocate the Montessori Academy now at Hotchkiss to G.B. Dealey in order to relieve overcrowding at Kramer, Preston Hollow and Rogers elementary schools ("K/PH/R").

*Summary of Contentions of the Parties*

The DISD contends that the Fair Housing Act of 1988, and the resurgence of interest in public education, have created unanticipated overcrowding at the K/PH/R, requiring the conversion of the Hotchkiss Montessori to a regular elementary school and the transfer of some K/PH/R students to it. The District acknowledges the popularity and academic success of the Hotchkiss Montessori but proposes to move it to what it considers a better facility at G.B. Dealey.

Plaintiffs oppose the DISD Motion, asserting that the Hotchkiss Montessori ("Montessori I") has been a successful desegregation magnet and that moving it to a "less suitable site" at Dealey would vitiate its effectiveness. Plaintiffs further argue that establishing an elementary school at

1. Plaintiffs' Motion Regarding Montessori Site at Hotchkiss, filed January 30, 1991; Black Coalition's Response to Plaintiffs' Motion, field February 19, 1991; Defendants' Response to Plaintiffs' Motion, filed February 20, 1991; External Auditor's Comments, filed February 21, 1991; Defendants' Motion to Locate Montessori I at G.B. Dealey in 1992–93, filed July 30, 1991; Plaintiffs' Response to the Motion, filed August 30, 1991; Black Coalition's Response to Motion, filed August 30, 1991; External Auditor's Report, filed January 13, 1992, and amended January 15, 1992; Amicus Curiae Brief in Support of Defendants' Motion, submitted by the Kramer/Preston Hollow/Rogers Task Force on Overcrowding, filed March 31, 1992; and the February 25, 1992 Report of Findings and Recommendations from the Special Education Parent Advisory Committee and E.D. Walker P.T.A.

The Court has also received many letters from Montessori parents protesting the District's relocation proposal; of course, these letters are not evidentiary.

Hotchkiss as proposed by DISD would create a predominantly minority school in violation of the Court's desegregation standards, and that other alternatives exist to remedy the problem of overcrowding at K/PH/R. Alternatively, Plaintiffs propose moving Montessori I to a larger permanent site at E.D. Walker as a means of counterbalancing the adverse effects of creating an additional predominantly minority school. (At the hearing Plaintiffs also suggested DeGolyer as an alternate site for Montessori I; the School District has not studied this possibility.)

Intervenor Black Coalition also opposes the DISD Motion, arguing that the Dealey facility is inadequate to house the Montessori program and that, in any event, the proposed move would not aid the desegregation process in the District but would create another predominantly minority school.

### Summary of Ruling

■ It is a lamentable fact that 65 schools in the Dallas Independent School District are overcrowded, operating at a level in excess of building capacity. Among these 65 are Kramer, Preston Hollow and Rogers; Kramer is particularly affected. To relieve overcrowding at K/PH/R, the School District proposes to transfer the Montessori Academy at Hotchkiss to Dealey and to relocate some of the students at K/PH/R to Hotchkiss. The District's planning for this move has been woefully insufficient. This move would compromise the Montessori magnet, and create a predominantly minority school at Hotchkiss.

The Hotchkiss Montessori ("Montessori I") is a magnet school, completely desegregated and nationally recognized, offering quality education to its 520 students. The waiting list for a Montessori education is long, and even after enrollment is filled at the new Montessori at Stone ("Montessori II") in fall 1992, will exceed 1500.

G.B. Dealey was closed as an elementary school by the Court in 1982 at the request of the School District. In recent years it has served as a recreation center for the City of Dallas. Dealey does not have enough space for the 520 Hotchkiss Montessori students; sufficient space will not be available until August 1994, contingent on passage of the December 1992 bond issue. Furthermore, Dealey is in poor condition and needs extensive renovation before it can be used as a school.

The Court concludes that the District's Motion must be denied for the reasons set forth in this Opinion, summarized as follows:

1. The relocation of the Hotchkiss Montessori magnet to Dealey at this time would cripple the successful Montessori program, and would therefore adversely affect desegregation in the Dallas Independent School District; and

2. The creation of a predominantly (83%) minority school at Hotchkiss would adversely affect desegregation and is not justifiable under the School District's proposal.

### Findings of Fact

I. The Hotchkiss Montessori (Montessori I).

1. The demand for Montessori programs has "boomed" throughout the country in recent years. *See* Testimony of Dr. Robert Pickering, DISD Expert on Montessori education ("Pickering"). Montessori programs are in the "main stream" of public education. The Hotchkiss Montessori is nationally recognized as "exemplary", and is "high on any list".

2. The 520 students at Hotchkiss Montessori come from throughout the DISD. *See* Table of students attending Hotchkiss by sending school zone (1990), Defendants' Exhibit ("DX") 6. The Hotchkiss Montessori is completely desegregated, *see* Stipulated Facts in Pretrial Order at 2–3 ("Stipulated Facts"), and has been a particularly successful magnet.

3. The particular success of the Hotchkiss Montessori students at the high school level evidences the advantages of the Montessori education. *See* Office of Desegregation Monitoring, Investigative Report on

L.L. Hotchkiss Vanguard and Academy, DX–5, Attachment 4. Similarly, the turnover rate of students at the Hotchkiss Montessori is negligible. *See* DX–5 at 23.

4. There are currently 3,318 students on the waiting list for the Montessori program. *See* Testimony of Dr. Andrew Martin, Principal of the Hotchkiss Montessori ("Martin"). Three hundred and eighty five students from the waiting list have to date opted to attend Stone for the 1992–93 academic year. *See* Stipulation, DX–21. The total capacity of Stone as a PK–6 facility is 480. Attendance at Stone for the 1992–93 academic year will be at full capacity. *See* Martin. Stone will not be ready to accommodate grades 7–8 until fall, 1993; equipment and supplies for these grades will not be available until then. *See id.*

Although there is dispute as to accuracy of the current list, it is clear that the opening of Montessori II at Stone in the fall of 1992 will not exhaust the present demand for Montessori education. *See* Martin. Based upon the several estimates submitted at the hearing the Court finds that more than 1500 students will remain on the waiting list for a Montessori education after Stone is filled.

5. The powerful attraction of the Montessori program as a desegregation tool is highlighted by the enrollment at Stone, which is located in a heavily minority area but which will have a desegregated student body. *See* DX–21.

6. The advantage of a Montessori education compared to a conventional education curriculum is widely recognized. *See* Pickering. The essence of Montessori education is the creation of an environment in which children are stimulated to learn and explore independently. The suitability of the educational environment and physical facilities are critical to the success of Montessori programs. *See* Martin; Pickering.

7. The use of portables for basic Montessori instruction is especially disfavored and "disjoints" the Montessori programs. *See* Pickering; Martin. The Montessori program fosters interaction between different age groups, and in particular promotes older students as role models and tutors for the younger students.

8. Compared to conventional education facilities, the Montessori program requires additional science, computer and home economic laboratories for the 7–8 grade curriculum. *See* External Auditor's Report (January 1992), Plaintiff's Exhibit ("PX") 9 at 21. Montessori programs require more open space within the building and larger classrooms. *See* Pickering. The optimal size for a Montessori school is 500–700 students. The facility itself must be designed so as to permit physical separation of age groups; Hotchkiss is so designed. *See* Martin; Pickering.

9. In 1979, the first Montessori Magnet school in DISD was established at Amelia Earhart pursuant to Judge Taylor's 1976 Desegregation Order. In 1984 this Montessori Magnet was moved to Hotchkiss. The move greatly increased the success and popularity of the Montessori program, primarily due to the superior facilities at Hotchkiss. *See* Martin. The District spent about $890,000 at Hotchkiss for facilities to accommodate the Montessori program. *See* PX–9 at 21.

10. As mentioned, the Montessori I has been moved once previously. It is "disastrous" to continue to move the Montessori. *See* Pickering. A permanent site for the Montessori Program is highly desirable. *See* Martin; Pickering. The Montessori Program reaches a productive stage 3–5 years after existing at a particular site; the Hotchkiss Montessori has just reached this stage. *See* Pickering.

11. For a successful Montessori move, much advance planning, including consultation with faculty, administration and parents is necessary. *See* Pickering. The DISD has not done such planning in connection with the proposed move to Dealey; in fact, the planning has been notably inadequate.

12. In preparation for the fall 1992 opening of Montessori II at Stone, two sets of teachers are scheduled to be trained at the Hotchkiss Montessori during the summer of 1992. *See* Martin. The American

Montessori Society ("AMS") recently certified and approved the facilities at Hotchkiss for the purpose of training the new faculty for Montessori II. Transfer of this training program to the Montessori facility at Stone is not possible since Stone cannot be fully equipped in time for the training and is not accredited by AMS for training purposes. *See* Martin. Any disruption in the training program planned at Hotchkiss for summer, 1992, would result in a shortage of faculty at both Montessori I and Montessori II. Special training of the faculty is essential to the success of the Montessori program. *See* Martin; Pickering.

13. Since the Hotchkiss Montessori is a magnet school any compromise of its programs would have an adverse impact on desegregation in the DISD. Any disruption of the faculty training program at Hotchkiss implicates the success of the Stone Montessori as well, and thus further aggravates the adverse impact on desegregation in the DISD.

II. G.B. Dealey.

1. DISD proposes to move the Hotchkiss Montessori I to G.B. Dealey. The DISD Board has not considered any other site. *See* Webster. This is significant because the Board has been aware since January and February, 1991, of the Plaintiffs' and Black Coalition's objections to Dealey. In deciding on Dealey, the Board did not consider that portables would be needed to provide space for the Montessori students. *See* Testimony of Rene Castilla, President of the DISD Board of Education ("Castilla").

2. In view of the special requirements of a Montessori program, Dealey is at this time inferior to the Hotchkiss site. *See* Martin. To house the present student population of Montessori I, Dealey would have to add 16 portable classrooms. *See* Testimony of William Webster, DISD Division Executive, Evaluation and Planning Services ("Webster"). In particular, the seventh and eighth grade core instruction would be housed in portables. Dealey has less interior open space and lacks the requisite laboratories (science, home economics and com-

puter) presently available at Hotchkiss. *See* Attachments to Defendants' Motion to Relocate; Martin.

Transfer of the Montessori I 7–8th graders to Stone for fall, 1992, as proposed by the District, would be detrimental to the Montessori program. Continuity and cohesion in the student body are critical to the success of the Montessori program. *See* Martin.

Seven portable classrooms presently are in use at Hotchkiss to house special activities: Music, Art, Speech Therapy and Laureate. *See* PX–9 at 11. However, the use of portables for special activities at Hotchkiss, in contrast to the use of portables for core instruction necessary at Dealey, is acceptable in the Montessori program. *See* Pickering; Martin.

3. Sufficient space for the Montessori program at Dealey without the use of portables will not be available until August 1994, at the earliest, by which time the District proposes to complete a 14–room permanent addition to Dealey, contingent on passage of the December 1992 bond package. *See* DISD Response to the U.S. District Court's Letter of March 3, 1992, DX–1. That addition will still fall two rooms short of the 16 rooms needed to house the present Montessori I population, without allowing for any growth. *See* Martin.

4. In recent years and until April 15, 1992 Dealey has been used as a recreation center by the City of Dallas Parks and Recreation Department. Dealey is in poor condition and needs extensive renovation before it will be suitable as a school building. *See* Pickering; Martin. Conversion of Dealey to a Montessori involves restructuring of changes made to the building by the City.

5. It will cost approximately $2 million to convert Dealey to a Montessori—$952,-500 for renovation plus about $1 million for the 14–room addition which rides on the bond issue. *See* Testimony of William Cotton, DISD Division Executive, Administrative Services ("Cotton"). The cost of converting Dealey to a Montessori will exceed

the cost of converting it to an elementary school, estimated at $1,212,500. *See* DX–1.

6. Students who ride the bus to K/PH/R spend a total time of 24 to 43 minutes per day on the bus. *See* DISD Time and Distance Studies, DX–20. No significant change in distance or time of travel would result if these students were sent to Dealey to reduce overcrowding at K/PH/R. *See* Webster.

### III. Kramer/Preston Hollow/Rogers.

1. K/PH/R are overcrowded and need relief. Kramer is using 26 portable classrooms and is at 168% of capacity; Preston Hollow has 12 portables and is at 121% of capacity; Rogers has 14 portables and is at 122% of capacity. *See* DISD, Facilities Profile Project Fall 1991 Update, PX–4. The student population in the present attendance zones of these schools, particularly at Kramer, will increase. *See* Webster. If Hotchkiss is reopened as an elementary school, it will commence with 619 students and its student population will increase. *See* Webster.

2. K/PH/R are not the most overcrowded facilities in the District. Kramer is the fourth most overcrowded facility; Rogers is 39th; and Preston Hollow, 41st. *See* PX–4.

3. The overcrowding at K/PH/R has been caused to a great extent by the passage of the Fair Housing Act of 1988 which became effective in March of 1989 and transformed apartment units in the area to family units. *See* Webster. Kramer was reopened, at the request of the District, as an elementary school in the fall, 1989.

4. The DISD Motion would relieve overcrowding at K/PH/R and would eliminate, at least temporarily, the use of portable classrooms at those schools. *See* Webster. As noted above, though, 16 portables at Dealey would immediately be necessary for core instruction if the Montessori were relocated to Dealey.

5. K/PH/R are presently desegregated and would continue to be desegregated under the District's proposed changes. *See* Stipulated Facts.

### IV. Overcrowded schools in DISD.

1. A total of 65 schools in the District are overcrowded, with enrollments that exceed building capacity. *See* PX–4; Webster.

2. The three most overcrowded schools in the DISD are all predominantly minority and are, in order: (1) Titche which is using 46 portable classrooms and is at 282% of capacity; (2) Houston which is using 12 portables and is at 192% of capacity; and (3) McNair which is using 16 portables and is at 186% of capacity. *See* PX–4. The relief contemplated by the DISD for these three schools is contingent on passage of the December 1992 bond election for the building of additional classrooms and schools. *See* Webster.

3. In order to provide needed relief to K/PH/R, the District has relied solely on its pending Motion to Relocate Montessori I to Dealey. *See* Webster. In view of known opposition of Plaintiffs and Intervenor Black Coalition, and since relocation of the Montessori Program is subject to Court approval, such reliance was not justified.

### V. Hotchkiss as an elementary school.

1. A Hotchkiss elementary school as proposed by the District would be a predominantly (83%) minority school. *See* Stipulated Facts. Years ago, this Court defined, and the District has acknowledged without objection in its annual reports, that "a predominantly minority school exists where the minority school population is more than 75%". *See, Tasby v. Wright,* 520 F.Supp. 683, 709 (N.D.Tex.1981), *aff'd in relevant part,* 713 F.2d 90 (5th Cir. 1983); DISD February 15, 1992 Report to the Court at 6. Creation of an additional predominantly minority school would adversely impact desegregation.

2. The Board of Education did not consider that granting the pending Motion would violate the Court's desegregation standard by creating a predominantly minority school. *See* Castilla.

3. Despite the District's assertions, the proposed elementary school at Hotchkiss would not be a "naturally desegregated

school". By the District's own definition, "a naturally desegregated school is a desegregated school where desegregation resulted from an integrated neighborhood rather than busing." *See* DISD February 15, 1992 Report at 6; *Tasby v. Wright*, 520 F.Supp. at 712. Such would not be the case at a Hotchkiss elementary school.

4. The District acknowledges the safety concerns surrounding the conversion of Hotchkiss to an elementary school. *See* Webster. Sidewalks and transportation would be required for the safe passage of students across the major thoroughfares of Skillman, Abrams, and Northwest Highway. *See* PX–9 at 22–24. The assurance given to the Court by the DISD in this regard was that buses "probably" would be provided. *See* Webster. The thoroughfares in question are extremely busy, with fast moving traffic, and the Court would regard it as essential that all possible safety measures be taken, including sidewalks and buses, before Hotchkiss could be opened as an elementary school.

## VI. E.D. Walker.

1. Walker, a facility originally built for over 1,000 students, now houses about 200 Special Education students with related staff and administrators. *See* Testimony of Herman Saettler, Executive Director for Special Education. Walker also houses other DISD offices and related activities. The cost of converting Walker to a Montessori is estimated at $4–5 million. *See* DX–1.

2. The District produced evidence that moving the Special Education students to another location would be disadvantageous to them. The District, however, has made no specific study about relocating these students and has not considered other locations, such as Pinkston. Plaintiffs suggest using Pinkston for these students, since only 48% of its space is currently utilized.

3. From the evidence adduced at the hearing the Court finds that relocation of the Montessori I at Hotchkiss to E.D. Walker is not feasible at this time.

## Conclusions of Law

■ 1. Every previously segregated school system has a continuing affirmative duty to bring about "the maximum desegregation practically achievable"; no school desegregation plan should be amended in a manner inconsistent with this fundamental principle. *Tasby v. Wright*, 585 F.Supp. 453, 455 (N.D.Tex.1984), *aff'd sub nom.*, *Tasby v. Black Coalition to Maximize Educ.*, 771 F.2d 849 (5th Cir.1985); *See also Tasby v. Wright*, 630 F.Supp. 597, 600 (N.D.Tex.1986). The School District's proposal contravenes this principle.

2. This Court has long considered magnet schools an essential tool for desegregation in the DISD. *See Tasby v. Wright*, 542 F.Supp. 134, 144–46 (N.D.Tex.1981); *Tasby v. Estes*, 412 F.Supp. 1192, 1205 (N.D.Tex.1976), *aff'd in relevant part*, 572 F.2d 1010, 1014 (5th Cir.1978). Relocating the Hotchkiss Montessori magnet to Dealey at this time, as proposed by the District, would impair its operation and success and would thereby adversely affect desegregation. Any alternate location for the Hotchkiss Montessori must be equal to that existing at Hotchkiss at the time of the proposed move.

■ 3. A desegregated school environment exists where the enrollment of black and hispanic students combined does not exceed 75%. *See Tasby v. Wright*, 520 F.Supp. at 709–13; *Tasby v. Estes*, 412 F.Supp. at 1199 n. 14. Converting Hotchkiss to an elementary school in the manner proposed by the District would create a new predominantly minority school with an 83% minority student population, and would be an unjustified impairment of the desegregation process in the DISD.

4. The School District has not established that creation of a predominantly minority school is the only practicable alternative to relieving overcrowding at K/PH/R. *See Tasby v. Wright*, 585 F.Supp. at 455, *aff'd sub nom., Tasby v. Black Coalition to Maximize Educ.*, 771 F.2d at 856; *Tasby v. Wright*, 520 F.Supp. at 713. The District's proposal is therefore not justifiable at this time. *See Green v. County School Board of New Kent County*, 391

U.S. 430, 439, 88 S.Ct. 1689, 1694, 20 L.Ed.2d 716 (1968).

5. In addressing problems of desegregation and assessing alternate options, the District may not treat cost as the determinative factor. *See Missouri v. Jenkins*, 495 U.S. 33, 50–52, 110 S.Ct. 1651, 1662–63, 109 L.Ed.2d 31 (1990). Certainly, this Court is mindful of the significance of cost as a factor, to be considered with other factors.

The DISD Motion to Relocate Montessori I at G.B. Dealey in 1992–93 is DENIED.

SO ORDERED.