Beryl N. JONES et al., Plaintiffs-
Appellees,

United States of America,
Intervenor,

v.

CADDO PARISH SCHOOL BOARD et al.,
Defendants-Appellees,

Jerry Adams et al., Movants-Appellants.

No. 74–1672.

United States Court of Appeals,
Fifth Circuit.

Aug. 30, 1974.

Norman J. Chachkin, Jack Greenberg, Margrett Ford, New York City, Hilry Huckaby, III, Shreveport, La., for appellants.

John R. Pleasant, Shreveport, La., for Caddo Parish School Bd.

Murphy W. Bell, Baton Rouge, La., for Beryl N. Jones et al.

Donald E. Walter, U. S. Atty., Shreveport, La., Robert H. Shemwell, Asst. U. S. Atty., Brian K. Landsberg, Dept. of Justice, Washington, D. C., for the United States.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

PER CURIAM:

Plaintiffs brought this class action originally in 1965 to desegregate the public schools of Caddo Parish, Louisiana. The matter has been before us several times, most recently in 1973 (see 487 F.2d 1275) and in 1970 (see 421 F. 2d 313).[1] Appellants have brought this appeal because they were denied the right to intervene in these proceedings by the District Judge.

---

1. Cf. United States v. Jefferson County Bd. of Educ., 5 Cir., 1966, 372 F.2d 836, aff'd en banc, 380 F.2d 385, cert. denied sub nom. Caddo Parish School Bd. v. United States, 389 U.S. 840, 88 S.Ct. 67, 19 L.Ed.2d 103 (1967). See also Hall v. St. Helena Parish School Bd., 5 Cir., 1969, 417 F.2d 801, cert. denied, 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed. 2d 180 (1969); see Jones v. Caddo Parish School Bd., 5 Cir., 1970, 421 F.2d 313.

On March 20, 1973, the United States, as plaintiff-intervenor, filed a response to plaintiffs' amended motion for further relief and, among other things, a recommendation was made that the District Court establish a biracial committee "to ascertain facts pertaining to the past and present operation of the school district, and to develop alternative methods of desegregation." The United States appended to its pleading a suggested order with a named biracial committee and District Judge Scott signed the order on the same day it was filed.

The biracial committee was composed of ten leading citizens of Caddo Parish, five white and five black, with an eleventh member, a chairman, who would vote only in the event of a tie. According to the School Board, the committee worked on its assignment for ten weeks and held seven public meetings and twenty-one private deliberative meetings. A plan of desegregation was unanimously adopted by the committee and filed with the District Court on June 1, 1973. On June 11, 1973, plaintiffs, through counsel, filed objection to the plan asserting that it was defective because it failed "to achieve as much desegregation as might feasibly be achieved." In their pleading, however, plaintiffs, through counsel, stated that they were "not opposed to the basic provisions of the court-appointed Citizens Committee's plan as it relates to desegregation of the administration, faculty and staff of the defendant School Board." On June 14, 1973, a motion was filed by Mrs. Fannie Adams on behalf of her minor children, Jerry, Vicki and William Adams, et al., through counsel, to add the named persons as additional parties plaintiffs in these proceedings. It was stated in the motion that "[t]he interest of the proposed additional parties plaintiffs are the same as those of the original plaintiffs; the effective disestablishment of the dual school system in Caddo Parish and the operation of a unitary school system therein. The proposed additional par-

ties plaintiffs will be represented by the same counsel who have heretofore represented the original plaintiffs."

Thereafter, on July 12, 1973, a motion was filed by Jesse N. Stone, Jr., "the original retained counsel for the original plaintiffs," in which he moved the Court to strike the names of associate counsel in the case and substitute the name of Murphy W. Bell, attorney (of Baton Rouge, Louisiana), as "chief counsel and trial attorney." The District Court approved the motion on July 13, 1973. On July 18, 1973, the District Court entered its order denying the motion to add additional parties plaintiffs. On the same date, the District Court entered orders denying motions to intervene of Caddo Teachers' Association and FAIR.

The record additionally shows that on July 19, 1973 a response to motion to enroll substitute counsel was filed by counsel whose names as associate counsel had been stricken as associate counsel for plaintiffs by Judge Scott's order of July 13, 1973. In this response the prayer thereto states that "undersigned counsel respectfully pray that this Court take the motion to enroll new counsel under advisement, grant the motion to add additional parties plaintiffs, permit the addition of Mr. Bell as counsel for Reverend Jones, Reverend McLain and Mrs. Smith at such time as a proper notice of appearance is filed, and proceed forthwith to a determination of the merits of this controversy."

On the next day, July 20, 1973, plaintiffs, through undersigned counsel (that is, new counsel Murphy W. Bell), filed their motion to strike objections previously filed herein to the court-appointed Citizens Committee's plan. The District Court accordingly entered its motion on the same day striking plaintiffs' objections. Likewise, on the same day, the District Court entered its order approving the biracial committee's plan in which the Court stated that the plaintiffs and the School Board had accepted the plan and the United States had filed its response which was appended to

the order and interjects no objection thereto.[2] The biracial committee's plan approved by the District Court was thus implemented for the school year 1973–74. According to the School Board, the administrative staff at the highest level is integrated on a 50–50 ratio, the instructional staff is moving from 60–40 to 50–50, transportation and fields of athletics are integrated, and majority to minority transfers are granted without question. According to the plaintiffs, the black community, the School Board, and the white community all have accepted the plan with the exception of the present appellants. The Advisory Committee provided in the plan has been appointed and is functioning with five white and five black members. One of the black members was elected by the members as chairman of the committee. Finally the plaintiffs state, "The committee successfully developed an educationally sound plan, one which, if continued to be implemented as its letter and spirit are intended, could rid our courts of the burden with which they have diligently labored for too many years." (See plaintiffs' brief, pp. 4–5.)

On November 19, 1973, a motion was filed by Jerry, Vicki and William Adams, minors, through Mrs. Fannie Adams, and others, seeking leave to intervene as plaintiffs. These are the same parties whom predecessor counsel for plaintiffs sought to add as parties plaintiff, which motion was denied by the District Court. The motion was filed by the same counsel who were associate counsel for plaintiffs but whose names were stricken in that capacity on motion approved by the District Court on July 13, 1973. Movers sought an evidentiary hearing in order that they might assert on behalf of applicants for intervention and the class of persons represented by them the deprivation of constitutional rights by the operation of a dual system

of public schools in Caddo Parish under the currently approved plan of desegregation under which the School Board is operating. The motion was denied without a hearing by the District Court, and this appeal followed.

We are presented with an unusual three-cornered situation in which plaintiffs who brought this suit originally in 1965 assert through their counsel that they are satisfied with an approved biracial committee's plan of desegregation which was adopted by the District Court. On the other hand, the applicants for intervention assert their dissatisfaction with the plan insofar as student assignment is concerned, though otherwise they are satisfied with the plan's details relating to administrative staff, faculty, transportation, etc. The United States through Brian K. Landsberg, Chief, Education Section, Department of Justice, has filed its letter with the Clerk of this Court in which it states, "The United States does not intend to participate unless the Court so desires."

Since the District Judge denied the motion of appellants to intervene, without an evidentiary hearing, we have no record before us except the pleadings, the contentions of the parties, and the representations in their briefs.

The problem here is involved with the fact that there are some one-race schools remaining in Caddo Parish under the plan of desegregation adopted by the District Court. In this regard the biracial committee stated in its report to the District Court, filed on June 1, 1973, the following:

> While certain Elementary School zones are left in such a manner as to project a predominately one race attendance pattern (11 predominantly black and 9 predominantly white), under the plan all Junior High Schools and all Senior High Schools project a

2. The exact text of the position of the United States reads as follows:

The present posture of this lawsuit considered, the United States of America, in-

tervenor herein, interjects no objection to ordering implementation of this plan, as is more fully set out in its response filed herein.

desegregated attendance pattern when the plan is fully implemented. As a result, no child in the Caddo Parish School District will be able to go through the school system without gaining the experience and benefits of attending schools where there are significant numbers of the opposite race.

The Committee has taken cognizance of the fact that Swann v. Board of Education has stated both that "the existence of some small number of one-race, or virtually one-race schools within a district is not in and of itself the mark of a system which still practices segregation by law" *and* "(w)here the . . . proposed plan for conversion from a dual to a unitary system contemplates the continued existence of some schools that are all or predominantly of one race, they have the burden of showing that such school assignments are genuinely non-discriminatory." The Committee submits that due to its bi-racial composition which included recognized leaders and representatives of a broad segment of both the black and the white communities, the fact that *at no time was it necessary for the chairman of the committee to cast a vote,* and the fact that the plan, as submitted, has the unanimous vote of the entire committee, there can exist no element of discriminatory practice in this plan. In addition, testimony from all segments of both communities in public hearings clearly indicates that the plan as submitted will be generally in accord with the desires of the overwhelming majority of the black and white community. The Committee wishes to stress the point that possession of a certain right does not carry with it the obligation for the possessor of that right to avail himself of its privileges against his will. In addition, should anyone feel that he is not enabled to take advantage of his right through attending his neighborhood school as assigned by the plan, the majority to minority transfer provision provided in the General Provi-

sions, coupled with the other provisions for changes in the Administration and Staff and the drastic change in attitude on the part of the entire community toward the problem of desegregation which has been so evident in the Committee's public hearings, will make it simple, practical, and genuinely possible for such a person to do so. [Emphasis supplied.]

According to defendant School Board, as a result of the plan including the complete desegregation of junior and senior high, 75% of the students in Caddo Parish will attend school in a desegregated situation with faculties which will within two years show a 50–50 ratio. The Board cites what it concludes is a similar situation in Northcross v. Board of Education of Memphis City Schools, 6 Cir., 1973, 489 F.2d 15, cert. denied, 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974).

Under the circumstances, however, we believe appellants are entitled to an evidentiary hearing on their motion to intervene. The Court must determine whether criteria in Hines v. Rapides Parish School Board, 5 Cir., 1973, 479 F.2d 762, are satisfied in that it must be determined whether the issues which appellants seek to bring to the attention of the Court were properly represented by plaintiffs. The District Court must, therefore, determine the class and who properly represents it. Appellants complain in the strongest terms that they represent a class who desire the achievement of greater desegregation than is necessary to satisfy plaintiffs. Thus we have an unusual contest between black groups represented by different counsel, some of whom were originally associated together when this suit was first filed, and we cannot determine on the record before us who most properly represents the rights of the black community in Caddo Parish. If it should be found in fact that appellants represent a class of black citizens of Caddo Parish whose constitutional rights are not properly protected by plaintiffs, they should be authorized to

intervene as a matter of right, and to present evidence in support of their contentions. Rule 24, Fed.R.Civ.P. Obviously all other parties should be offered an equal opportunity to present evidence in support of their positions. Due process of law requires no less under the circumstances.

We have taken note of the suggestion that the District Judge who tried this case below should no longer be permitted to try the matter on remand. We reject appellants' request. We are not given any specific allegations of fact why we should grant such relief. We have full confidence in the integrity and ability of the District Judge, that he will follow the law and grant to appellants as well as to the parties to this proceeding the constitutional rights to which they are entitled.

Vacated and remanded for further proceedings.