**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-50528

TAYLOR COMMUNICATIONS GROUP, INC.,

Appellant,

VERSUS

SOUTHWESTERN BELL TELEPHONE COMPANY,

Plaintiff-Appellee.

VERSUS

PUBLIC UTILITY COMMISSION OF TEXAS; PAT WOOD, III;
JUDY WALSH; PATRICIA CURRAN; TIME WARNER COMMUNICATIONS
OF AUSTIN, L.P.; TIME WARNER COMMUNICATIONS OF HOUSTON, L.P.;
AND FIBRCOM, INC.

Defendant-Appellees.

Appeal from the United States District Court
for the Western District of Texas

April 13, 1999

Before WISDOM, STEWART, and DENNIS, Circuit Judges.

WISDOM, Circuit Judge:

Introduction

Appellant Taylor Communications Group, Inc. (Taylor) sought to intervene in litigation

involving Southwestern Bell Telephone Co. (Southwestern Bell) as plaintiff, and Time Warner

Communications, Inc. (Time Warner) and the Texas Public Utilities Commission (TPUC) as

defendants. The district court denied Taylor's motion to intervene as of right, or, in the alternative, for permissive intervention. Taylor now appeals. All parties to the litigation oppose Taylor's appeal. We affirm.

## Background and Facts

Congress passed the Federal Telecommunications Act of 1996 (the Act) with the specific intention of opening all telecommunication markets to the public.[1] Southwestern Bell had previously held a monopoly on telephone service in this region of the country. Upon passage of the Act, Time Warner entered the market in competition with Southwestern Bell.

The Act imposes several duties on companies which had previously held monopolies in this field. One of the duties created by the Act required Southwestern Bell to allow Time Warner to interconnect its own facilities with Southwestern Bell's network as a means of providing service. Under the Act, each company may charge the other for the use of its facilities, and those charges must be mutual and reciprocal.[2] Time Warner and Southwestern Bell entered into such an agreement, and the Texas Public Utilities Commission approved the deal. Not long after, Time Warner filed a complaint with TPUC, asserting that Southwestern Bell had failed to comply with the reciprocal compensation provisions for local telephone traffic. Southwestern Bell asserted that it had, in fact, complied to the degree required by the agreement.

The question of compliance comes down to whether calls to an Internet Service Provider (ISP) constitute local or long-distance traffic. Upon administrative review, TPUC held that the calls were local, and therefore subject to the reciprocal compensation agreement. Southwestern Bell,

---

[1] SBC Communications, Inc. v. F.C.C., 138 F.3d 410, 413 (D.C. Cir. 1998).

[2] 47 U.S.C. § 252 (d) (2).

2

objecting to this ruling, filed suit in federal district court, seeking declaratory and injunctive relief preventing the implementation of the TPUC ruling.

Taylor also had an interconnection agreement with Southwestern Bell, separate and distinct from that of Time Warner. That agreement was the subject of a different administrative review which was still pending at the time Southwestern Bell filed suit. After Southwestern Bell filed suit, Taylor sought to intervene. Taylor asserts that its agreement with Southwestern Bell is factually distinguishable from that of Time Warner. Nevertheless, Taylor asserts that the determination whether calls to ISP's are local in the Time Warner case would necessarily become precedent in Taylor's pending administrative conflict with Southwestern Bell.

Citing these *stare decisis* concerns, Taylor sought to intervene as of right, or, in the alternative, by permission of the district court. The district court denied these motions. Taylor now appeals.

## Standard of Review

We review a denial of intervention as of right *de novo*.[3] We review a denial of permissive intervention for an abuse of discretion.[4]

## Intervention as of Right

To intervene as of right, Taylor must meet four prerequisites: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; (4) the

---

[3] Ceres Gulf v. Cooper, 957 F.2d 1199, 1202 n.8 (5th Cir. 1992).

[4] Woolen v. Surtran Taxicabs, Inc., 684 F.2d 324, 330-331 (5th Cir. 1982).

3

applicant's interest must be inadequately represented by the existing parties to the suit.[5] Failure to meet any one of these requirements is fatal to a claim of intervention as of right.[6]

## Timeliness

Taylor's Motion to Intervene was filed three weeks after Southwestern Bell had initiated the underlying proceedings in district court. At that point the district court had taken little substantive action on the matter. Further, both TPUC and Time Warner concede that Taylor's motion was timely filed. Southwestern Bell contends that the motion was untimely as premature, not as delinquent. Southwestern Bell's argument that Taylor filed its motion prior to the adjudication by the TPUC of its own dispute with Southwestern Bell goes to the issue of whether Taylor has an interest in the proceedings, not toward the issue of timeliness. Taylor's motion is therefore timely.

## Taylor's Interest

Does Taylor have an interest relating to the property or transaction which is the subject of the action?

To answer this question we must first address the necessary preliminary issue: what is the property or transaction which is the subject of the action? Taylor is seeking to intervene in litigation between Southwestern Bell (the plaintiff) and Time Warner and TPUC (the defendants). The subject of the litigation is TPUC's interpretation of a provision in a contract between Southwestern Bell and Time Warner. Does Taylor have an interest in this dispute?

---

[5] New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 463 (5th Cir.), *cert. denied*, 469 U.S. 1019 (1984).

[6] Kneeland v. NCAA, 806 F.2d 1285, 1287 (5th Cir.), *cert. denied*, 484 U.S. 817 (1987).

4

Taylor asserts that this analysis is controlled by our opinion in Sierra Club v. Espy.[7] Espy involved a motion to intervene filed by two forest industry trade associations, seeking intervention in litigation between three environmental organizations and the Secretary of Agriculture. This Court held that the movants had "legally protectable property interests in existing timber contracts... threatened by the potential bar on even-aged management."[8] Taylor contends that it, similarly, has a legally protectable property interest in its contract with Southwestern Bell which is threatened by a potential finding that calls to ISP's are not subject to the reciprocity agreement.

Our Espy holding is factually distinguishable from the case at bar. In Espy, a ruling contrary to the position of the timber industry was certain to affect the already-existing contracts. That is not the case here. In the case before us, a ruling in favor of Southwestern Bell's position *might* adversely affect Taylor's position, but not necessarily. Taylor concedes this point in its arguments to this Court. First, in its brief, Taylor addresses the fourth requirement for intervention as of right, that the movants interests must be inadequately represented by the existing parties to the suit. In arguing that Time Warner could not adequately represent Taylor's interests, Taylor notes "[A]s a result of the difference in the negotiation postures of the respective interconnection agreements, Time Warner cannot assert certain claims and defenses available to Taylor."[9] In short, Taylor's agreement with Southwestern Bell is factually distinct from Time Warner's agreement with Southwestern Bell. It would be pure speculation to say that a judicial pronouncement as to the Time Warner case would necessarily affect Taylor's agreement with Southwestern Bell. Because the cases are factually

---

[7] 18 F.3d 1202 (5th Cir. 1994).

[8] Id. at 1207.

[9] Appellants Brief at 19.

5

different, the resulting application of existing law may necessitate a different result. Taylor's counsel conceded this point at oral argument, stating Taylor "might not be bound" by the districtcourt's decision in this case. In essence, Taylor seeks to intervene as of right in litigation which Taylor concedes may have no impact on its contract with Southwestern Bell. Taylor has no such right.

Taylor relies on a second aspect of the Espy decision to support its theory of an interest in the underlying litigation. Espy states that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[10] Taylor emphasizes to this Court the language "involving as many apparently concerned persons," while ignoring the phrase "as is compatible with efficiency and due process." Taylor was not the only party seeking to intervene in this matter. Waller Creek Communications Co. also filed a motion to intervene. Further, an additional six telecommunications companies sought leave to participate as *amicus curiae*. This leaves the district court with no less than ten telecommunications companies, including Time Warner and Southwestern Bell, not to mention TPUC, all attempting to have their say in this litigation. Had these other companies sought to follow the route chosen by Taylor, each of these companies could seek to litigate different factual aspects of their individual contracts, as Taylor admittedly sought to do, in seeking to prevail. We fail to see how litigating nine different contracts simultaneously is compatible with efficiency and due process. The district court instead properly permitted the filing of *amicus* briefs. As the Seventh Circuit has noted

> When should the prospect of an appellate decision cutting off further litigation
> in the circuit (or the nation as a whole, if the Supreme Court decides the case)
> be enough to support intervention? "Infrequently" is one response, an essential

---

[10] Espy at 1207 (internal citations omitted).

6

one if cases are to remain manageable. Trade associations, labor unions, consumers, and many others may be affected by (and hence colloquially "interested" in) the rules of law established by appellate courts. To allow them to intervene as of right would turn the court into a forum for competing interest groups, submerging the ability of the original parties to settle their own dispute (or to have the court resolve it expeditiously). Participation as *amicus curiae* will alert the court to the legal contentions of concerned bystanders, and because it leaves the parties free to run their own case is the strongly preferred option.[11]

In analyzing the facts of this case, we conclude that, unlike the appellants in the Espy case, Taylor's interest in the underlying litigation is too speculative and general to support intervention as of right.

Having determined that Taylor does not have an interest in the underlying litigation sufficient to meet the second requirement for intervention as of right, we need not address the third and fourth requirements outlined above.

## Permissive Intervention

Taylor asserts that the district court abused its discretion in denying Taylor's motion for permissive intervention. Permissive intervention is governed by Federal Rule of Civil Procedure 24(b), which states, in pertinent part: "Upon timely application anyone may be permitted to intervene in an action...when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Taylor contends that, because the motion to intervene was timely filed, granting the motion for permissive intervention will not unduly delay or prejudice the adjudication of the underlying litigation. One does not necessarily follow the other. In analyzing the issue of intervention as of

---

[11] Bethune Plaza, Inc. v. Lumpkin, 863 F.2d 525, 532-533 (7th Cir. 1988).

7

right, we have discussed the manner by which a broad definition of "interest" can lead to unmanageable litigation. Our analysis of "undue delay" leads us to the same conclusion.

Taylor asserts that its negotiating posture in agreeing to the contract differs markedly from that of Time Warner. Taylor further asserts that it has claims and defenses with regard to its contract which are not available to Time Warner. Taylor makes these assertions based on a belief that the facts surrounding the Taylor contract are so different from those surrounding the Time Warner contract as to possibly bring about a different result. Yet at the same time, Taylor contends that intervening in the underlying litigation will not cause undue delay. Again, we cannot see how litigating facts that are wholly unrelated to the underlying litigation can be achieved without causing undue delay to the parties involved in the suit. In seeking to bring the litigation to an expeditious close, the district court did not abuse its discretion in denying Taylor's motion for permissive intervention.

## Conclusion

The order of the district court denying Taylor's motion for intervention as of right, or, in the alternative, permissive intervention, is AFFIRMED.