**Beryl N. JONES, et al., Plaintiffs,**

**United States of America, Plaintiff–Intervenor**

**v.**

**CADDO PARISH SCHOOL BOARD, et al., Defendants.**

**No. CIV. A. 11,055.**

United States District Court, W.D. Louisiana, Alexandria Division.

Sept. 26, 2001.

For parties and attorneys, call clerk of court's office in Shreveport, for Plaintiff.

---

### *RULING*

LITTLE, Chief Judge.

Before this court is a Motion to Intervene by Mr. James Pannel, Mr. Abon Ball, Mrs. Jacqueline Ball, and Mrs. Annie Bryant ("the Proposed Intervenors"). The Proposed Intervenors are either parents or grandparents of black children now, or soon to be, enrolled in the public schools operated by the Caddo Parish School Board ("the School Board"); and they seek relief pursuant to Rule 24(a) & (b) of the Federal Rules of Civil Procedure ("FRCP"). For the reasons that follow, the motion is DENIED.

---

## I. PROCEDURAL AND FACTUAL BACKGROUND

This motion has its roots in an action that began over 25 years ago. On 4 May 1965, parents of seven black children commenced a suit against the School Board seeking desegregation of the Caddo Parish public schools. The parents filed suit under 42 U.S.C. § 1983. The United States intervened as a plaintiff later that same year. *See United States v. Jefferson County Bd. of Educ.*, 372 F.2d 836, 896 (5th Cir.1966), *aff'd* 380 F.2d 385 (5th Cir.1967), *cert. denied*, 389 U.S. 840, 88 S.Ct. 67 (1967). Since the *Jefferson County* decision, the United States has been, and continues to be, an active party to this litigation.

In early 1973, at the request of the United States, the district court ordered the School Board to implement a desegregation plan; a plan developed and recommended by a biracial committee. Shortly thereafter, a group of parents sought intervention, alleging that the plan would not result in a unitary school system because the plan contemplated the maintenance of too many one-race schools. The district court denied intervention without affording a hearing for the parties. The Fifth Circuit reversed, holding that the applicants for intervention had a right to a hearing on the motion. *See Jones v. Caddo Parish Sch. Bd.*, 499 F.2d 914, 917 (5th Cir.1974). Despite the favorable ruling, however, none of the applicants for intervention requested a hearing on the motion. Therefore, the court-ordered desegregation plan took effect.

On 9 September 1976, after having operated under the desegregation plan for three years, the School Board filed a motion to have the Caddo Parish school system declared unitary, thereby warranting dismissal of the original action. The United States opposed the motion. On 30 December 1977, the district court made the following decisions: (1) ruled that the School Board had fully complied with the 1973, court-ordered, desegregation plan; (2) declared the school system to be unitary; and (3) dismissed the suit against the School Board. Private plaintiffs to the suit did not respond to the district court decision, but the United States filed a motion to amend the court's judgment.

While the district court considered the government's objections and motion, the court ordered the School Board to continue operating under the 1973 desegregation plan.

On 2 June 1980, the district court convened a status conference and notified all attorneys, including those who had previously appeared in the case, that unless the plaintiffs' attorneys objected, the United States, as plaintiff-intervenor, would represent the interests of the private plaintiffs. The district court did not receive any objections. Accordingly, the United States and the School Board entered into extensive and widely publicized negotiations, which lasted almost one year. Finally, on 5 May 1981, the parties crafted a Consent Decree, which the district court approved on 7 May 1981.

After publication of the Consent Decree, the district court denied the motion of a new party to intervene for two reasons: (1) the plaintiffs filed an untimely motion; and (2) the United States adequately represented the applicant-intervenor's interests. *See Jones v. Caddo Parish Sch. Bd.*, 735 F.2d 923, 925 (5th Cir.1984).

On 23 July 1987, the School Board filed a Notice of Compliance with the 1981 Consent Decree and requested the district court to rule that the School Board had achieved unitary status. Once again, in August 1987, two groups of black citizens and the National Association for the Advancement of Colored People ("NAACP") filed a motion to intervene. Almost simultaneously, the United States filed its response to the School Board's Notice of Compliance, which indicated that while the School Board had taken substantial steps toward implementing the requirements of the Consent Decree, certain areas continued to need improvement, including faculty, staff, and administrative assignments in the school system and the remaining one-race schools. On 1 May 1989, the district court denied all motions to intervene for two (2) reasons: the applicant-intervenors file an untimely motion; and (2) the doctrine of the law of the case barred intervention. In this litigation, the court held the law of the case to be that the 1981 Consent Decree constituted a constitutionally adequate plan for the desegregation of

the Caddo Parish schools, thereby making the applicant-intervenors motion to intervene untimely and unnecessary because the United States adequately represented the applicant-intervenors' interests.

On 4 April 1990, on the basis of the negotiations between the United States and the School Board, the district court entered an order affirming the parties' agreement, which provided in pertinent part,

(1) Except as specifically set forth in ¶ 7 [1] of the Joint Motion, there are no issues or disputes regarding the successful compliance and full implementation of the 1981 Consent Decree;

(2) The Caddo Parish School Board has complied with and fulfilled its commitment under the Decree with respect to Mandatory Assignments; and

(3) The Consent Decree is terminated as to schools north of Caddo Lake and as to magnet schools and laboratory schools ... And the United States shall not be entitled to seek any further or additional remedy with respect to ... schools north of Caddo Lake, nor with respect to any Mandatory Assignment District.

On 28 February 2001, the School Board submitted a revised Strategic Educational Reform and Facilities Utilization Plan ("the Plan") to the United States. The plan sought the following objectives: (1) to adjust certain attendance zones due to shifting demographics of Caddo Parish; (2) meet the educational needs of Caddo Parish students; and (3) provide a blueprint to restructure academically a number of the district's schools. On 3 July 2001, the Proposed Intervenors filed a motion challenging the Plan.

In support of their Motion to Intervene, the Proposed Intervenors allege the following: (1) the School Board's failure to replace the existing desegregation plan with an effective method of desegregation has resulted in the consignment of thousands of black children to racially isolated school settings;

(2) the school system is not yet unitary; (3) the proposed Plan for the years 2001–2010 does not eradicate the racially segregated character of the school system; and (4) the Plan designates the predominantly white schools as academic magnet schools, while designating the predominantly black schools as career magnet schools. The Proposed Intervenors seek relief under both forms of intervention authorized by Rule 24(a) & (b) of the FRCP.

## II. LAW AND ANALYSIS

Under FRCP 24, there are two types of intervention: (1) intervention as of right under rule 24(a); and (2) permissive intervention under Rule 24(b). *See* Fed.R.Civ.P. 24(a) & (b). The federal standards for intervention under FRCP 24(a) & (b) are solidly established and frequently applied. *See Stallworth v. Monsanto Co.*, 558 F.2d 257, 263–70 (5th Cir.1977); *see also, New Orleans Public Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 469–73 (5th Cir.1984). Because Proposed Intervenors seek relief under both forms of intervention, we will address each application separately.

### A. *FRCP 24(a)—Intervention as of Right*

██ Intervention as of right is governed by Rule 24(a), which, is divided into two sections: Rule 24(a)(1) and 24(a)(2). Rule 24(a)(1) provides that "[u]pon timely application anyone shall be permitted to intervene in an action when a statute of the United States confers an unconditional right to intervene." Fed.R.Civ.P. 24(a)(1). Here, Proposed Intervenors have failed to identify a statute of the United States that confers upon them an unconditional right to intervene; therefore Proposed Intervenors fail to meet the requirements of Rule 24(a)(1). Our focus, then, shifts to examining the requirements of Rule 24(a)(2).

---

1. The United States has stated its concerns that the obligations and responsibilities contained in Part 1, Section F, entitled: "Faculty and Staff," which relates to the "assignment of principals to schools", Part II, Section E, entitled: "Remaining One–Race Schools," which relates to the establishment of enhancement programs at such schools, and Part II, Section F, entitled: "Majority to Minority Transfers," which relates to one-race schools, have not been implemented as required by the Consent Decree. *See* April 4, 1990, Order, ¶ 7.5

To intervene as of right under rule 24(a)(2), the Proposed Intervenors must meet a four-prong test:

(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

Fed.R.Civ.P. 24(a)(2); *See also, Ford v. City of Huntsville*, 242 F.3d 235, 239 (5th Cir. 2001) (citing *Taylor Communications Group, Inc. v. Southwestern Bell Tel. Co.*, 172 F.3d 385, 387 (5th Cir.1999)). The Proposed Intervenors must establish the four conditions and bear the burden of demonstrating its entitlement to intervene. *See United States v. Texas Eastern Transmission Corp.*, 923 F.2d 410, 414 (5th Cir.1991). The failure of the Proposed Intervenors to fulfill any one of these prerequisites forecloses their ability to intervene as of right under Rule 24(a)(2). *See Bush v. Viterna*, 740 F.2d 350, 354 (5th Cir.1984).

The first condition to consider is the timeliness of the motion to intervene. Timeliness is a threshold question addressed to the sound discretion of the court. *See NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2602, 37 L.Ed.2d 648; *Corley v. Jackson Police Dept.*, 755 F.2d 1207, 1209 (5th Cir. 1985). In *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir.1994), the Fifth Circuit set forth four factors by which to evaluate the timeliness of an intervention motion: (1) the length of time the applicants knew or should have known of their interest; (2) prejudice to existing parties caused by the applicants' delay; (3) prejudice to applicants if their motion is denied; and (4) any unusual circumstances. *Id.* at 1205. For interventions as a matter of right, the court employs a more lenient standard of timeliness. *See Stallworth*, 558 F.2d at 266. Even under the more lenient standards, Proposed Intervenors have failed to apply for intervention in a timely fashion. First, Proposed Intervenors seek to intervene twenty years after the district court entered the 1981 Consent Decree, and 11 years after the court granted unitary status to the school district. Courts are particularly hesitant to allow intervention after the existing parties have entered into a consent decree: "Intervention at this time would render worthless all of the parties' negotiations because negotiations would have to begin again and the intervenor would have to agree to any proposed consent decree." *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir.1991). Second, this case has advanced far into the remedial stage. The only issue remaining before this court is continued compliance with the parameters of the 1990 order. And third, not only is the application to intervene untimely in a chronological manner, but granting the motion would prejudice existing parties as it "would amount to a relitigation of the original entry of a delicately-crafted consent decree." *Ruiz v. Estelle*, 161 F.3d 814, 827 (5th Cir.1998). The Proposed Intervenors, therefore, fail to satisfy the timeliness condition of intervention as of right.

The second condition to intervention as of right requires the Proposed Intervenors to demonstrate an interest in the subject matter of the underlying transaction. The Fifth Circuit has warned against defining "property or transaction" too narrowly. *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir.1992). It is generally accepted that parents seeking to intervene in a desegregation litigation have an interest in eliminating segregation in their children's schools sufficient to satisfy the interest requirement of Rule 24(a)(2). *See Pate v. Dade County Sch. Bd.*, 588 F.2d 501, 503 (5th Cir.1979) *cert. denied sub nom. Beckford v. Dade County Sch. Bd.*, 444 U.S. 835, 100 S.Ct. 67, 62 L.Ed.2d 44 (1979). For the purposes of this motion, we will assume that the Proposed Intervenors meet the second condition for intervention as of right.

The third condition for intervention as of right requires that the disposition of the case may impair the applicant's ability to protect its interest. In a school desegregation case, intervention as of right is not appropriate if the Proposed Intervenors present issues that existing parties are aware of and stand competent to represent. *See United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755, 757

(5th Cir.1995) (citing *Hines v. Rapides Parish Sch. Bd.*, 479 F.2d 762, 765 (5th Cir. 1973)). Proposed Intervenors have admitted that their ultimate goal is a desegregated, unitary school system, a goal the United States shares with the Proposed Intervenors. Because the United States, as plaintiff-intervenor, shares the Proposed Intervenor's interest in achieving and maintaining a unitary school system and is competent to represent those interests, the Proposed Intervenors fail the third condition for intervention as of right.

Finally, the last condition for intervention as of right requires that the Proposed Intervenors evidence that their interests are inadequately represented by the United States. The test in the Fifth Circuit is that "when the party seeking intervention has the same ultimate objective as a party to the suit, the existing party is presumed t adequately represent the party seeking to intervene, unless the applicant-intervenor demonstrates adversity of interest, collusion, or nonfeasance." *Franklin Parish*, 47 F.3d at 757 (quoting *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1287 (5th Cir.1987) *cert. denied* 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 (1987)). The Proposed Intervenors, therefore, must exhibit an adversity of interest on the part of the Government, collusion between the Government and the School Board, or nonfeasance on the part of the Government. While the presumption of adequate representation may be rebutted on a "relatively minimal showing," the Proposed Intervenors "must produce something more than speculation as to the purported inadequacy." *League of United Latin Am. Citizens v. Clements*, 884 F.2d 185, 189 (5th Cir.1989) (citing *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir.1979)). This the Proposed Intervenors have wholly failed to do.

The Proposed Intervenors make no claims of an adversity of interest, collusion, or nonfeasance on the part of the Government. On the contrary, the record clearly reveals that the United States vigorously represented the interests of the original plaintiffs in the parties' shared, ultimate goal of achieving and maintaining a unitary school system. On

numerous occasions, the Government objected to the School Board and district court's plans and orders that did not fully implement a unitary school system. Likewise, the Proposed Intervenors have failed to produce evidence that the United States had any motivation or interest different from that of the Proposed Intervenors. Moreover, no evidence has been offered to show there is any collusion between the School District and the Government. The Proposed Intervenors, therefore, have not overcome the presumption of adequate representation, and the record evidences that the Government has in the past adequately represented the interest of the Proposed Intervenors and will continue to do so in the future. This Court, therefore, finds that the Proposed Intervenors are not entitled to intervene as a matter of right. Our analysis, however, does not end here. We now address whether the Proposed Intervenors should be granted leave to intervene under Rule 24(b) of the FRCP.

## B. *Rule 24(b)—Permissive Intervention*

■ Proposed Intervenors argue in the alternative that this court should permit them to intervene under Rule 24(b), which provides the following:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed.R.Civ.P. 24(b). Permissive intervention is a two stage process. First, the court must decide whether one of the grounds for such intervention exists under Rule 24(b). *See Stallworth*, 558 F.2d at 269. If this threshold requirement is met, the court must then exercise its discretion in deciding whether intervention should be allowed. *Id.*

Once again, under Rule 24(b)(1), Proposed Intervenors have failed to identify a statute of the United States that confers a conditional right to intervene. Our attention, there-

fore, will now shift to the parameters of Rule 24(b)(2).

Permissive intervention, as Rule 24(b)(2) provides, is appropriate in circumstances in which (1) the application is timely; (2) the moving party's claim or defense and the main action have a common question of law or fact; and (3) the proposed intervention will not unduly delay or prejudice the adjudication of the original parties' rights. The Proposed Intervenors fail each condition of Rule 24(b)(2). First, under our former analysis under Rule 24(a)(2), the Proposed Intervenor's motion is untimely. Second, one portion of the Proposed Intervenor's motion challenges the School Board's 10–year Plan, but the Plan is not related to the district court's 4 April 1990 order. The 1990, court order identified areas where the School Board had not complied with all provisions of the 1981 Consent Decree; that is, faculty and staff assignments, remaining one-race schools, and majority-to-minority transfers. As a result, the Proposed Intervenors current motion that references the 10–year Plan lacks a sufficient nexus with the original action. The remaining portion of the Proposed Intervenor's motion centers on whether a unitary school system exists. This unitary school issue has been previously decided by the court. It is well settled that intervention in a school desegregation case is properly denied if the issues presented by the Proposed Intervenors had been previously determined. *See Davis v. East Baton Rouge Parish Sch. Bd.,* 721 F.2d 1425, 1441 (5th Cir.1983)(citing *Hines v. Rapides Parish Sch. Bd.,* 479 F.2d 762 (5th Cir.1973)). Here, the Proposed Intervenors attempt to rehash an issue the court already decided: whether a unitary school system existed in Caddo Parish. Finally, an additional factor courts may consider in determining permissive intervention is "whether the intervenors' interests are adequately represented by other parties." *Kneeland,* 806 F.2d at 1289. In our preceding analysis under Rule 24(a)(2), we found that the Proposed Intervenors had not overcome the presumption of adequate representation on the part of the Government. Concluding, this court denies permissive intervention for the Proposed Intervenors.

### III.   CONCLUSION

The court, therefore, finds that the Proposed Intervenors' Motion to Intervene, with its accompanying pleading, both as a matter of right and with permission is hereby DENIED.